

## NUMBER 13-08-00439-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**CHRISTINE FRANKS,** **Appellant,**

**v.**

**JOHN LESLIE ROADES,** **Appellee.**

### On appeal from the 329th District Court
### of Wharton County, Texas.

# O P I N I O N

### Before Justices Yañez, Rodriguez, and Benavides
### Opinion by Justice Benavides

Christine Franks, appellant, appeals from a summary judgment granted in favor of

John Leslie Roades, appellee.  Franks asserts that fact issues exist regarding whether

Roades breached his fiduciary duty to her and whether Roades acted negligently.  We

affirm.

### I. BACKGROUND

Roades, an attorney in Wharton, Texas, began representing Franks in 1999 when

he prepared a durable power of attorney, appointing Michael Franks ("Michael"), her son, as her attorney-in-fact. In July 2001, Franks changed the power of attorney to appoint Carol Thompson ("Thompson"), her daughter, as her attorney-in-fact. Franks also granted Thompson signing authority on her checking account.

Franks's mental condition deteriorated over time to the point where she was unable to handle her affairs, and Thompson would help her with various activities, including writing checks to pay bills, dressing, going grocery shopping and to doctors' appointments, and taking her medication. In January 2003, Franks was diagnosed as having "severe and global cognitive dysfunction" and was informed that she should have "complete supervision in tasks that require memory such as medication management and meal management." Franks also had a history of "mini strokes" and nighttime hallucinations, and it was recommended that she have 24-hour care. Thompson hired "sitters" for Franks to help with meal preparation and other household duties, along with taking her shopping. Thompson paid the sitters out of Franks's funds.

Throughout this time, Michael continually disagreed with the diagnoses, encouraged Franks to not take her medication, and even threatened Thompson and her family. Because of the difficulties with Michael and Franks's deteriorating condition, Thompson visited Roades on multiple occasions, seeking his help in discerning the best ways to resolve the family disputes regarding Franks's care and the management of Franks's funds. Roades discussed various options with Thompson, including guardianships and estate plans, and referred Thompson to an estate planning and elder law attorney in Austin who he hoped could devise an estate plan that would placate Michael. Roades continually encouraged Thompson to try to work things out with Michael.

After being unable to reach an agreement with Michael and due to Franks's

continual decline, acting within her powers under the durable power of attorney as Franks's attorney-in-fact, Thompson decided to file an application for guardianship of Franks. To do so, Thompson retained Roades to file the application and paid Roades $5,000 from Franks's funds.

On June 24, 2003, Roades filed the application for guardianship. Roades believed that the guardianship was necessary to protect Franks and considered himself obligated under rule 1.02(g) of the disciplinary rules of professional conduct to file the application. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) ("A lawyer shall take reasonable action to secure the appointment of a guardian . . . for . . . a client whenever the lawyer reasonably believes that the client lacks legal competence and that such action should be taken to protect the client.").

That same day, Franks and Michael appeared in Roades's office because Michael wanted Roades to change Franks's power of attorney and appoint him her attorney-in-fact. Roades informed Michael that he could not represent Michael and that Michael should seek another attorney. Pursuant to a prior instruction from Franks, Roades was not to discuss any of her legal matters with Michael or in Michael's presence; therefore, Roades did not mention the filing of the guardianship application with either Franks or Michael at that meeting. Roades also believed that Franks was not competent to change her power of attorney at that time. Roades knew of Michael's previous threats against Thompson and believed him to have a "volatile nature," so he said as little as possible during the meeting in order to hasten Michael's departure.

Michael contested the guardianship. Upon Michael's application, a statutory probate judge was appointed. Pursuant to the probate code, the probate judge appointed an

attorney ad litem to represent Franks and appointed a temporary guardian of Franks's person. *See* TEX. PROB. CODE ANN. § 646(a) (Vernon Supp. 2009) ("In a proceeding under this chapter for the appointment of a guardian, the court shall appoint an attorney ad litem to represent the interests of the proposed ward."). Franks also had a privately-retained attorney to represent her during the guardianship proceedings. The trial court ordered an independent medical and psychological evaluation of Franks, and the court-appointed physician concluded that Franks was incapacitated and recommended the appointment of a guardian of Franks's person and estate. Franks's attorney ad litem moved to disqualify Roades from representing Thompson, asserting that Roades had a conflict of interest due to his prior legal work for Franks. The attorney ad litem alleged that, even though Thompson used Franks's power of attorney to retain Roades to file the guardianship, in fact, Roades was representing Thompson in the guardianship proceedings. On September 29, 2003, the trial court denied the motion.

On December 30, 2003, the parties filed a binding mediated settlement agreement wherein the parties agreed to: (1) dismiss the guardianship application; (2) "pursue the viability" of creating a trust to manage Franks's estate; (3) grant the temporary guardian the power to manage Franks's home assistant from January 2004 to June 2004; (4) have the home assistant work specified hours in Franks's home; (5) alternate visitation with Franks between Michael and Thompson; (6) make certain repairs to Franks's home; (7) make no expenditures from Franks's funds except those "regular and ordinary expenditures as agreed upon by Christine Franks"; (8) prohibit Michael from moving into Franks's home or relocating Franks from January 2004 to June 2004; and (9) pay out of Franks's estate the professional fees for the attorney ad litem, the temporary guardian, Thompson's attorney's fees, Franks's attorney's fees, and the mediator's fees. The fees

4

amounted to more than $120,000, including $38,000 in attorney's fees for Roades. Franks, Michael, Thompson, their attorneys, and Roades all signed the agreement. Franks, Michael, and Thompson signed agreeing as to substance; and the attorneys, including Roades, signed agreeing as to form only. Roades then non-suited the guardianship proceeding.

On June 22, 2005, asserting negligence, breach of fiduciary duty, gross negligence, conversion, fraud, and deceptive trade practices, Franks sued Roades and Thompson.[1] On February 15, 2008, Roades filed both a traditional and no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a. On April 4, 2008, Franks responded to Roades's motion for summary judgment. On April 11, 2008, without stating the grounds, the trial court entered summary judgment on Roades's motion. This appeal ensued.

## II. STANDARD OF REVIEW

Whether the motion for summary judgment was brought on no-evidence or traditional grounds determines our standard of review. *See* TEX. R. CIV. P. 166a(c), (i); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.). A no-evidence summary judgment equates to a pre-trial directed verdict, so we apply the same legal sufficiency standard of review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772.

We review de novo the trial court's granting of a traditional motion for summary judgment. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.). We must determine whether the movant met its burden to establish that no genuine issue

---

[1] On February 14, 2008, Thompson was non-suited; thus, she is not a party to this appeal.

5

of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). In a traditional summary judgment, the movant bears the burden of proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

We affirm a traditional summary judgment only if the record establishes that the movant has negated at least one essential element of the plaintiff's causes of action or has conclusively proved its defense as a matter of law. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. When reasonable people could not differ as to the conclusion to be drawn from the evidence, the matter is conclusively established. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the movant has produced sufficient evidence to establish its right to summary judgment, the burden to produce competent controverting evidence raising a fact issue with regard to the challenged element shifts to the non-movant. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). When the trial court's judgment does not specify which of several proposed grounds was dispositive, we affirm on any ground offered that has merit and was preserved for review. *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004).

### III. ANALYSIS

On appeal, Franks contends that Roades was not entitled to summary judgment

6

because: (1) he offered no expert rebuttal testimony to refute Franks's expert; (2) a fact issue exists on Franks's breach of fiduciary duty claim; and (3) a fact issue exists on Franks's negligence claim.[2] Roades argues, in part, that Franks's claims are all based on the assertion that he improperly sought the guardianship and that he is entitled to summary judgment because, as a matter of law, he had a duty under the disciplinary rules of professional conduct to seek the guardianship.[3] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g); *In re E.L.T.*, 93 S.W.3d 372, 376 (Tex. App.–Houston [14th Dist.] 2002, no pet.). Whether Roades had such a duty is a question of law, which is inappropriate for a no-evidence summary judgment. *In re Estate of Allen*, 301 S.W.3d 923, 929-30 (Tex. App.–Tyler 2009, pet. filed) (stating that because construction of an unambiguous will is a question of law, it cannot be the subject of a no-evidence motion for summary judgment) (citing *Harrill v. A.J.'s Wrecker Service, Inc.*, 27 S.W.3d 191, 194 (Tex. App.–Dallas 2000, pet. dism'd w.o.j.) (noting that a movant may not move for no-evidence summary judgment on its own affirmative defense)); *see* Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 HOUS. L. REV. 1379, 1388-89 (2010). *But see Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 156 n.4 (Tex. App.–Eastland

---

[2] Roades also challenged, in his no-evidence motion for summary judgment, Franks's causes of action for gross negligence, fraud, conversion, conspiracy, and deceptive trade practices. In her response to Roades's no-evidence motion for summary judgment and in her brief to this Court, Franks does not argue that she presented legally sufficient evidence to support these causes of action. Therefore, Franks has waived any appellate challenge to Roades's no-evidence motion for summary judgment on these claims. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see also* TEX. R. APP. P. 33.1; *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992).

[3] In the trial court, Roades objected in writing to Franks's basing any of her claims on her allegation that Roades improperly non-suited the guardianship. The trial court granted the objection, and on appeal, Franks does not challenge that ruling. Therefore, we will not consider the portions of Franks's arguments that are based on Roades's conduct in filing the non-suit. *See* TEX. R. APP. P. 38.1(i); *see also Moe v. Option One Mortg. Corp.*, No. 14-07-00550-CV, 2009 WL 136892, at *4 (Tex. App.–Houston [14th Dist.] Jan. 20, 2009, no pet.).

2001, pet. denied) (declaring that a movant may move for no-evidence summary judgment on a question-of-law issue on which it does not bear the burden of proof). Therefore, we will consider whether Roades was entitled to traditional summary judgment.

## A.    Franks's Expert

Franks first asserts that because Roades did not offer expert testimony to refute Franks's own expert, Roades was not entitled to summary judgment. Roades contends that Franks's expert impermissibly offered testimony on a question of law, or, in the alternative, that Franks's expert's opinion was conclusory and therefore no evidence of negligence or breach of fiduciary duty. We agree with Roades that Franks's expert's affidavit was conclusory and is therefore not proper summary judgment evidence.

In her response to Roades's motion for summary judgment, Franks attached the affidavit of Darlene Payne Smith, an expert in guardianship law. Regarding Roades's negligence and breach of fiduciary duty, Smith stated:

> **Breach of fiduciary duty:**  In this case, breach of fiduciary duty is an issue because John Roades personally benefitted at the expense of his client, Christine Franks. Specifically, it is my opinion that Mr. Roades should not have undertaken the representation of the agent when Mrs. Franks had appeared at his office for counseling. He has no letter terminating the relationship. By taking the case on behalf of the agent, he caused the expenditure and waste of Christine Franks'[s] funds when he was personally paid approximately $38,000 in attorney's fees while obtaining no benefit to Christine Franks. Further, he made no objection to the fees of any of the other lawyers in the case and Mrs. Franks paid $126,000 to obtain no benefit.

> **Negligence:**  It is my opinion that John Roades was negligent. Because he brought the guardianship proceeding for a person who was either competent . . . or incompetent and he dismissed the case with no benefit or protection for Christine Franks, he is on the horns of a dilemma. Either Christine Franks, from John Roades'[s] perspective, required a guardianship or she did not. To wrongfully bring a guardianship proceeding would obviously be a breach of duty owed to a client[,] and John Roades claims not to have done so. Under the facts claimed by John Roades, he believed

8

Christine Franks required a guardianship based upon personal observations. He filed the application for guardianship, gained medical evidence supporting his position through an Independent Medical Evaluation conducted by the [c]ourt, obtained no controverting medical evidence, and yet he consented to dismiss the application. He did so at the great expense of approximately $126,000 in attorneys' fees and costs.

In contrast, he must believe Mrs. Franks competent since he relies on her testimony years later as competent testimony to release him from liability for negligence. In summary, it was a failure of the ordinary standard of care owed by this attorney to his only client, Christine Franks, to have allowed the guardianship proceeding which he wrongfully initiated to end without trial on the merits unless there was real benefit to Christine Franks, which he admits there was not, and to allow the expenditure of almost $126,000 of her estate which significantly depleted its value. A reasonably prudent attorney would have acted to benefit Christine Franks either by not filing the application for guardianship or by referring the case and letting another attorney for agent [sic] have a proper guardianship established after the filing, or conduct a trial on the merits. These opinions are expressed by me to be more likely than not.

Roades first attacks Smith's affidavit asserting that, as an expert, she was not permitted to opine on the "purely legal matter[ ]" of "whether Roades was obligated to seek the guardianship of [Franks]." *See Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94-95 (Tex. App.–Houston [14th Dist.] 2004, no pet.). However, because Smith did not offer an opinion on Roades's obligations under the disciplinary rules, we conclude that she did not impermissibly opine on the relevant question of law.

Roades further argues that Smith's affidavit was conclusory.[4] "'A conclusory statement is one that does not provide the underlying facts to support the conclusion.'" *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.–Dallas 2004, pet. denied) (quoting

[4] In the trial court, Roades objected to Franks's expert's affidavit contending that it was conclusory. Roades did not obtain a ruling on his objections to the affidavit; however, because a conclusory affidavit is a substantive defect as opposed to a defect of form, on appeal, we can determine whether the affidavit is conclusory. *See Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (citing *City of Wilmer v. Laidlaw Waste Sys., Inc.*, 890 S.W.2d 459, 467 (Tex. App.–Dallas 1994), *aff'd on other grounds*, 904 S.W.2d 656, 660-61 (Tex. 1995)); *see also Friedrichs v. Coastal Ref. and Mktg., Inc.*, No. 13-01-647-CV, 2003 WL 21025884, at *1 (Tex. App.–Corpus Christi May 8, 2003, no pet.).

*Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 242 (Tex. App.–Waco 2003, no pet.)). "An affidavit that merely contains an expert's conclusory statements is insufficient to support or defeat summary judgment. This is true because such statements are not credible or susceptible to being readily controverted." *See also Tummel & Casso v. Snyder*, No. 13-04-223-CV, 2007 WL 474313, at *5 (Tex. App.–Corpus Christi Feb. 15, 2007, pet. denied) (mem. op.) (citing *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996)). "An expert's opinion can defeat a claim as a matter of law, . . . [b]ut it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law . . . ." *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). The expert attorney must do more than merely state his opinion and then conclude that the standard of care has not been met. *See id.* at 236; *see also Am. Commc'n, Inc. v. Henkel*, No. 13-98-539-CV, 2000 WL 35729387, at *2 (Tex. App.–Corpus Christi 2000 Aug. 31, 2000, no pet.) (not designated for publication). "The expert must state the basis for his opinion; in other words, the expert must explain why he reached his conclusions. An affidavit that fails to explain the legal basis or reasoning supporting the expert's opinion is conclusory." *See also Henkel*, 2000 WL 35729387 at *2 (citing *Burrow*, 997 S.W.2d at 236; *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991)).

Smith offers no legal basis for her conclusion that Roades "wrongfully initiated" the guardianship proceedings. Under the disciplinary rules of professional conduct, an attorney has a duty to reasonably attempt to secure a guardian for a client who he believes is not competent and that such action is necessary to protect her interests. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g); *In re E.L.T.*, 93 S.W.3d at 376. Smith does not explain the legal basis for her conclusion that "wrongfully bring[ing] a guardianship

10

proceeding would obviously be a breach of [a] duty owed to a client." Nowhere does she cite the appropriate legal standard for evaluating an attorney's negligence, and she does not explain what duty Roades owed Franks. *See Alvarado v. Old Republic Ins. Co.*, 951 S.W.2d 254, 263 (Tex. App.–Corpus Christi 1997, no writ) (noting, in an insurance bad faith case, that, among other things, failing to cite the legal standard for demonstrating bad faith makes an expert's affidavit conclusory); *see also Cosgrove v. Grimes*, 774 S.W.2d 662, 664-65 (Tex. 1989) (stating that, in Texas, legal malpractice is based on negligence, that "[a] lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney[,]" and that "[t]he standard is an objective exercise of professional judgment . . . ."). Smith also fails to demonstrate how Roades's negligence, if any, actually damaged Franks. She merely states that approximately $126,000 in attorneys' fees and costs were expended.[5] We conclude that Smith's affidavit is conclusory as to her assertion that Roades was negligent and is therefore not competent summary judgment evidence.

Additionally, Smith states that her conclusion that Roades breached his fiduciary duty to Franks is based on Roades's improper representation of Franks's attorney-in-fact, Thompson, in the guardianship proceedings. We note initially that Smith contradicts herself in her discussion about Roades's alleged negligence in that she states that Franks was Roades's "only client." Additionally, Smith's affidavit is conclusory because it fails to state the standard by which Roades's fiduciary duty is measured. "The focus of breach of

_____

[5] According to Franks, the attorneys' fees and costs break down as follows: $38,000 to Roades; $9,404 to the temporary guardian; $5,502.68 to the attorney ad litem; $900 to the mediator; $3,105 to the court-appointed psychiatrist; $33,000 to Franks's attorney; $31,000 to Michael's attorney (who is now representing Franks in this appeal); and $5,000 to Kalyn Lathon, whose role Franks does not identify. The record does not contain any indication that any of the parties objected to these payments.

11

fiduciary duty is whether an attorney obtained an *improper* benefit from representing a client . . . ." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.–Fort Worth 2002, pet. denied) (emphasis added). "Integrity and fidelity" are the cornerstones of an attorney's fiduciary duty. *Id.* "A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations." *Id.* (citing *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.–Houston [14th Dist.] 2001, pet. denied)).

Smith does not explain how Roades's purported representation of Thompson, as Franks's attorney-in-fact, placed him in a position of representing two different parties. The undisputed evidence reveals that Thompson, acting under Franks's power of attorney, paid Roades a retainer to file the guardianship application, which sought to have Thompson appointed Franks's guardian. Smith does not indicate how such an action caused Franks and Thompson to become adverse parties, and she does not state how Roades was representing anyone other than Franks through the person Franks appointed to handle matters on her behalf. *See* TEX. PROB. CODE ANN. § 642(b)(1) (Vernon 2003) (noting that a person with an interest adverse to the proposed ward cannot file an application to create a guardianship for the proposed ward); *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.–Texarkana 1994, writ denied) (demonstrating that "the appointment of an attorney-in-fact creates an agency relationship[,]" which "creates a fiduciary relationship as a matter of law").

Smith further states that Roades "personally benefitted" while obtaining "no benefit

12

to Christine Franks" and that by not objecting to the other expended fees, Roades caused Franks to pay $126,000 for which she received no benefit. Smith does not clarify how Franks received "no benefit" from Roades's action, *see Cosgrove*, 774 S.W.2d at 665 ("Attorneys cannot be held strictly liable for all of their clients' unfulfilled expectations."), and "personally" benefitting from representing a client cannot be the sole measure for breach of fiduciary claims because attorneys generally expect to be paid for their work. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 563 (Tex. 2006) (recognizing that an attorney "like any other professional, expects timely compensation for work performed and results obtained"). We conclude that Smith's affidavit is conclusory and is no evidence of breach of fiduciary duty; therefore, Roades was not required to contradict this testimony with an expert of his own. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam). Franks's first issue is overruled.

## B.   Breach of Fiduciary Duty

In her second issue, Franks asserts that summary judgment was improper because fact issues remain regarding Roades's alleged breach of fiduciary duty. *See Beck v. Law Ofcs. Of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.–Austin 2009, no pet.) (noting that a "breach-of-fiduciary-duty claim focuses on 'whether an attorney obtained an improper benefit from representing the client'") (quoting *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.–Dallas 2007, pet. denied)). A breach of fiduciary duty by a lawyer "'most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations.'" *Id.* (quoting *Gibson v. Ellis*, 126 S.W.3d

13

324, 330 (Tex. App.–Dallas 2004, no pet.)). Specifically, Franks contends that Roades breached his duties of loyalty and full disclosure.[6] *See Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) (detailing a fiduciary's duty of full disclosure)*; Slay v. Burnett Trust*, 143 Tex. 621, 639-40, 187 S.W.2d 377, 387-88 (Tex. 1945) (discussing a fiduciary's duty of loyalty).

### 1. Duty of Loyalty

Franks contends that Roades breached his duty of loyalty to her by continuing to pursue the guardianship over her objection and the objections of both her attorney ad litem and her privately-retained counsel. Additionally, Franks asserts that Roades breached his duty of loyalty by representing Thompson in the guardianship proceedings, which amounted to advocating "a position for another (Thompson) that was directly adverse to the position advocated by his former client [Franks], her attorney ad litem, and her privately-retained counsel."

The uncontroverted evidence shows that, at the time Roades filed the guardianship application, he had received and read doctors' reports from a psychologist and a psychiatrist who evaluated Franks during early 2003. Sue Williams, Ph.D., a psychologist, examined Franks and concluded that her "neuropsychological test results reflect severe and global cognitive dysfunction." Regarding Franks's competency, Williams stated that

---

[6] Franks attaches the labels "duty of loyalty" and "duty of full disclosure" to her breach of fiduciary claim for the first time on appeal. However, the substance of her appellate arguments under these headings demonstrates that these are the same arguments she made in the trial court in support of her breach of fiduciary duty claim. Thus, she has not waived these arguments on appeal. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see also In re Hidalgo*, 279 S.W.3d 456, 460 (Tex. App.–Dallas 2009, pet. filed) (citing *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999); *Doctor v. Pardue*, 186 S.W.3d 4, 16 (Tex. App.–Houston [1st Dist.] 2005, pet. denied)).

.

Franks "is showing such profound deficits in her reasoning, new learning, and retention that she is currently not competent to make decisions with regard to finances and self care and should have complete supervision in tasks that require memory such as medication management and meal management." Deena M. Ghandi, M.D., a psychiatrist, evaluated Franks and noted that she "[h]as a significant memory deficit that would impair her ability to handle her own finances." In Dr. Ghandi's opinion, Franks "will need a legal guardian for long[-]term issues such as medical care and medical decision[-]making as well as financial assistance and living situations."

Other than referencing Roades's motion for summary judgment and his affidavit attached in support of his motion, Franks does not direct us to any evidence that her privately-retained counsel contested the guardianship. Moreover, Roades's motion and affidavit merely state that Franks hired her own attorney, which is not evidence that Franks or her privately-retained counsel opposed the guardianship. Nowhere does the record indicate that Franks objected to the guardianship, except the court filings made by her court-appointed attorney ad litem, who, Franks asserts, "must necessarily file a general denial and force the guardianship applicant to prove all elements necessary to obtain the guardianship." Citing *Cahill v. Lyda*, 826 S.W.2d 932 (Tex. 1996) and *Estate of Tartt v. Harpold*, 531 S.W.2d 696 (Tex. Civ. App.–Houston [14th Dist.] 1975, writ ref'd n.r.e.), Franks argues that this is true because "in every guardianship case, the [a]ttorney [a]d [l]item is required from the outset to seek to deny the Application for Guardianship" regardless of whether he "actually believes his client is incapacitated."

Franks stated in her deposition testimony that Roades had always done a good job for her, that he did not make any misrepresentations to her, that he did not fail to disclose

15

any information he should have disclosed to her, that he did not take advantage of her, that he did not make any guarantees or warranties to her, that he did not damage her in any way, and that none of his "alleged improper actions cost" her any money. Franks did not remember the guardianship application being filed or that any doctors had ever declared her to be incompetent.[7]

When Roades filed the guardianship application, he believed, and the undisputed facts support, that Franks was incapacitated and in need of a guardian. While Franks asserts at various times that she was his "client" and also his "former client," and no termination of the attorney-client relationship appears in the record, at the time Roades filed the application and throughout the whole process, Roades maintains that he was Franks's attorney. In fact, Franks acknowledges as much in her brief to this Court. Thus, when Roades filed the application, he was acting under the disciplinary rules, which required him to seek the guardianship. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g); *In re E.L.T.*, 93 S.W.3d at 376. A failure to follow the disciplinary rules cannot give rise to civil liability, *see Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 613 (Tex. App.–Houston [14th Dist.] 2006, pet. denied); we cannot therefore conclude that *following* the disciplinary rules may form the basis for civil liability.

Guardianships are not inherently adversarial proceedings; thus, the applicant is not automatically adverse to the ward. *See* TEX. PROB. CODE ANN. § 642(b)(1). The trial court denied Franks's motion to disqualify Roades, in which she asserted this same conflict-of-

---

[7] Franks appears to contend that Roades's reliance on her deposition is misplaced because Roades had previously alleged that Franks was incapacitated. Of course, Roades is entitled to rely on Franks's statements in the present law suit because, among other reasons, if Franks were not presently competent, she would not have had capacity to file the suit. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (noting that incompetent individuals do not have capacity to sue).

interest theory, and she does not challenge the trial court's ruling on appeal. Additionally, Franks makes no claim that Thompson was either disqualified from serving as her guardian or that Thompson had an interest adverse to Franks. *See* TEX. PROB. CODE ANN. § 642(a) (noting that any person may bring an application for the appointment of a guardian, so long as the applicant does not have an interest adverse to the ward); *In re Guardianship of Miller*, 299 S.W.3d 179, 189 (Tex. App.–Dallas 2009, no pet.) ("The probate code does not define an interest adverse to the interest of a ward or proposed ward under section 642."); *see also* TEX. PROB. CODE ANN. § 681 (Vernon Supp. 2009) (delineating the factors that disqualify a person to serve as a guardian); *see also Betts v. Brown*, No. 14-99-00619-CV, 2001 WL 40337, at *4 (Tex. App.–Houston [14th Dist.] 2001, no pet.) (not designated for publication) (analogizing section 642 with standing to contest a will and concluding that "an interest is adverse to an interest of a proposed ward under section 642 when that interest does not promote the well-being of the ward").

We conclude that, as a matter of law and based on the undisputed evidence, Roades reasonably believed that Franks was incompetent and that a guardianship should be pursued to protect her interests. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g); *see also id.* TERMINOLOGY (defining "reasonable belief" to mean that "the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable"). Franks does not cite any authority indicating that, under the rule 1.02(g) duty, the attorney cannot file an application for guardianship on behalf of the person the client has already empowered with the ability to act on her behalf, and we are not aware of any. Thus, Roades did not breach his duty of loyalty to Franks by filing the application seeking to have the trial court appoint Thompson as guardian. Because Roades acted properly under the

17

duty imposed by the disciplinary rules, we cannot conclude that he breached a duty of loyalty to her under these circumstances.

2.    **Duty of Full Disclosure**

Franks argues that Roades breached his duty of full disclosure by failing to discuss the guardianship application with her. Roades contends, in the alternative, that Franks waived this argument due to insufficient briefing, *see* TEX. R. APP. P. 38.1(i), and that he acted properly under his attorney-client relationship with Franks. We disagree that Franks waived this argument; however, we agree with Roades that he fulfilled his duties under the attorney-client relationship.

Rule 38.1(i) requires the appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *Id.* Franks cites the controlling case law relating to a duty of full disclosure and provides examples with citations to the record of facts she contends reveal Roades's breach. Therefore, Franks did not waive the issue.

A fiduciary has "a duty of full disclosure of all material facts known to [him] that might affect [his client's] rights." *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) (citing *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508-09 (Tex. 1980); *Baird v. Mills*, 119 S.W.2d 889, 892 (Tex. Civ. App.–Austin 1938, writ ref'd)). A fiduciary relationship exists between an attorney and his client as a matter of law. *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). The disciplinary rules recognize that, in some situations, an attorney's communication with his client will be hampered by the client's particular situation. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 3, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005)

18

("Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impractical, as for example, where the client is a child or suffers from mental disability . . . ."). Additionally, "a lawyer should seek to maintain reasonable communication with a client under a disability, insofar as possible. When a lawyer reasonably believes a client suffers a mental disability or is not legally competent, it may not be possible to maintain the usual attorney-client relationship." *Id.* 1.03 cmt. 5.

Roades stated in his affidavit in support of his motion for summary judgment that in July 2001, Franks had instructed him to "not discuss her affairs with Michael." When Michael and Franks visited his office in June 2004, Roades was still acting under this instruction from Franks. He also reasonably believed that Franks was not competent to handle her legal affairs, as evidenced by the medical evaluations and his interaction with Thompson and Franks during the preceding years. Franks does not direct this Court to any case law demonstrating that an attorney's duty of full disclosure remains even when the attorney reasonably believes the client is not legally competent, giving rise to his duty under the disciplinary rules to seek a guardianship, and we are not aware of any such precedent. Because Roades acted pursuant to Franks's instructions and under the guidance of the disciplinary rules, we conclude that Roades did not breach his duty of full disclosure to Franks.

Franks also asserts that Roades was operating under a misinterpretation of the law regarding an attorney's duty to an incapacitated client. Stating that Roades was an "inexperienced attorney who attempt[ed] to dabble in guardianship law[,]" Franks claims that "no competent attorney would interpret the phrase 'take reasonable action to secure the appointment of a guardian,' to mean that such attorney is free to abandon his client

19

and *represent another client* in such a proceeding." Appellant's Brief at 15-16. (Emphasis in original). *See id.* 1.02(g). To support this allegation, Franks cites rule 1.02(a), which states in relevant part, "[s]ubject to paragraphs (b), (c), (d), and (e), (f), and (g), a lawyer shall abide by a client's decisions: (1) concerning the objectives and general methods of representation . . . ." *Id.* 1.02(a). Franks further argues that when these rules are put "in context, it is clear that the attorney's duty is to his *client*, even if he believes such client to be incapacitated." Appellant's Brief at 16. (Emphasis in original). Without citing authority, Franks states that the attorney for a proposed ward may only contest the guardianship and that no other option is available to him.[8] The plain text of rule 1.02 indicates otherwise. *See* Tex. Disciplinary R. Prof'l Conduct 1.02

The "subject to" language indicates that the general rule cited by Franks actually gives way to the specific language under which Roades acted in this case. *See generally EOG Resources, Inc. v. Hanson Production Co.*, 94 S.W.3d 697, 702 n.2 (Tex. App.–San Antonio 2002, no pet.) (noting that the "ordinary sense" of "'subject to' means 'subservient to' or 'subordinate to' or 'limited by'"); *Fazekas v. Univ. of Houston*, 565 S.W.2d 299, 307 (Tex. Civ. App.–Houston [1st Dist.] 1978, writ ref'd n.r.e.) (same). While generally an attorney has a duty to follow his client's decisions, when the attorney "reasonably believes that the client lacks legal competence and that . . . action should be taken to protect the client[,]" the "lawyer shall take reasonable action to secure the appointment of a guardian or other legal representative for, or seek other protective orders with respect to" his client. Tex. Disciplinary R. Prof'l Conduct 1.03(a), (g). When the attorney reasonably believes

---

[8] In a prior section in her brief, Franks does cite authority for her claim that an attorney *ad litem* must oppose the guardianship. However, such precedent is inapplicable to Roades because he was not acting as Franks's attorney ad litem. As the record clearly indicates, the trial court appointed a different attorney to serve as Franks's attorney ad litem, and as Franks herself notes, the attorney ad litem did contest the guardianship.

his client is incompetent, as Roades did here, then he has a special duty under subsection (g) that limits his duty under subsection (a). *Id.* Therefore, Roades was not acting under a "misinterpretation of the law"; he was doing exactly what rule 1.02(g) required him to do. *Id.* at 1.02(g). Instead of abandoning his client as Franks suggests Roades did, Roades acted under the disciplinary rules and in his client's best interest when he believed that she was incompetent.

Because Roades did not breach his fiduciary duty while fulfilling his duty under disciplinary rule 1.02(g), we overrule Franks's second issue on appeal. *See id.*; *In re E.L.T.*, 93 S.W.3d at 376.

## C. Negligence

In her third issue, Franks contends that a fact issue remains regarding whether Roades was negligent. The basis of her negligence claim is that Roades, while representing Franks, filed the guardianship application on behalf of Thompson. Franks asserts that a reasonably prudent attorney would have either not filed the guardianship application or would have referred Thompson to a different attorney. Franks does not address, with citations to precedent, how Roades's fulfilling his duty under the disciplinary rules to seek the guardianship for her was unreasonable. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g); *In re E.L.T.*, 93 S.W.3d at 376. Thus, under the facts of this case, we cannot determine that it is unreasonable for an attorney to follow the mandates of the disciplinary rules, which establish minimum standards that, when not met, subject the lawyer to disciplinary action. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT PREAMBLE ¶ 7 *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005); *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex. 1996).

21

As previously discussed, Roades reasonably believed Franks to be incompetent and that a guardianship was necessary to protect her interests, which led to his duty under rule 1.02(g) to seek to secure such a guardianship for her. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(g). Franks argues, essentially, that Roades should have ignored the standards for serving an incompetent client, imposed on him by the disciplinary rules. Franks does not, however, cite any authority stating that an attorney may do so, and we are not aware of any. Again, without citing authority applicable to Roades, Franks contends that Roades's only option as Franks's attorney was to contest the guardianship. As mentioned, we cannot find such authority and decline to impose such a duty on attorneys when that duty would be in direct contradiction to rule 1.02(g)'s duty. *See id.*

Therefore, having already determined that, as a matter of law, Roades acted properly under the duty imposed on him by the disciplinary rules, we conclude that no fact issue exists regarding whether Roades failed to act as a reasonably prudent attorney. *See Cosgrove*, 774 S.W.2d at 664-665 (setting forth the standard of care in legal malpractice cases). Franks's third issue is overruled.

## IV. CONCLUSION

Having overruled Franks's appellate issues, we affirm the summary judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
15th day of April, 2010.

22