

## NUMBER 13-24-00546-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**SIX THOUSAND AND THIRTY SIX
AND 00/100 DOLLARS ($6,036.00)
IN U.S. CURRENCY AND OTHER
ITEMS LISTED ON EXHIBIT "A",**                       **Appellants,**

**v.**

**THE STATE OF TEXAS,**                              **Appellee.**

---

### ON APPEAL FROM THE 25TH DISTRICT COURT
### OF GONZALES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Chief Justice Tijerina**

In this civil forfeiture case, $6,036.00 and other items were seized from pro se appellant Freddie Fonseca, an inmate at Eden Detention Center, during the execution of a search warrant at appellant's residence in Harwood. Appellant contends that the

forfeiture of the currency and other items was barred by the thirty-day limitations period because "the [S]tate did not perfect due diligence in serving citation of seizure and intended forfeiture."[1] We reverse and render.

## I. BACKGROUND

On April 8, 2020, officers with the Gonzales Police Department executed a search warrant on appellant's residence and found methamphetamine, cocaine, and marijuana, some of which was packaged for sale and distribution. The officers seized the currency, five watches, four rings, three necklaces, seven pendants, one pin, one bracelet, a silver bullion bar, a night vision monocular, binoculars, sixteen tires, and twelve rims. On April 30, 2020, the State filed its notice of seizure and intended forfeiture and requested issuance of citation. However, according to the State, at some point it withdrew its request for issuance of citation because appellant had been arrested and the State did not know his location.

On July 16, 2020, the State filed a second request for issuance of citation to the Wilson County Jail. The citation was returned unserved because appellant was not there. On August 13, 2020, the State requested a third issuance of citation to the federal Karnes County Correctional Center that was also returned unserved.

On February 1, 2023, the State sought issuance of citation once more to the Karnes County Correctional Center, and on November 15, 2023, appellant was served at the Eden Detention Center.[2] Appellant filed an answer to the State's notice of seizure and

---

[1] Because we find appellant's first issue dispositive as further explained below, we need not address appellant's other three issues complaining that: (1) the citation failed to include the officer's statement, the reason for the seizure, and a list of the items seized; (2) the seized currency and other items were not contraband; and (3) the trial court lacked jurisdiction because "[a]ppellant was not charged with any offense classified as a first or second degree felony" drug offense. *See* TEX. R. APP. P. 47.1.

[2] The State avers that it is unknown how appellant was served at the correct address in Eden.

intended forfeiture on November 28, 2023, and affirmatively pleaded the defense of limitations and stated that service was untimely. The State filed requests for admissions, interrogatories, and production of documents. Appellant did not respond to the requests.

Appellant filed a motion for summary judgment or motion to dismiss arguing that "the State did not perfect service of process on [him]" within the "thirty-day limitation period"; therefore, the trial court should dismiss the cause "based upon lack of diligence in service of citation." Appellant also challenged the elements of the State's forfeiture cause of action. On July 22, 2024, the State filed a response and objection to appellant's motion for summary judgment with attached evidence it claimed supported each element of its cause. The State argued that it used due diligence in locating appellant, who had been placed in federal custody "shortly after his arrest following the execution of the search warrant at his residence on April 8, 2020."

The State explained Investigator John Brumme with the Gonzales County Attorney's Office began searching for appellant on August 12, 2020, "continued to check the federal system to locate [appellant] for service," and "as soon as [appellant] was located," on February 1, 2023, "a request to issue citation was submitted and the citation was prepared." The State attached Brumme's affidavit stating:

> Between August 12, 2020 and February 1, 2023, I searched the online Federal Bureau of Prisons "find an inmate" section in efforts to locate the whereabouts of [appellant]. After diligent efforts, [appellant's] location was discovered and the issuance of citation was requested again on February 1, 2023. The citation was prepared on the same day. It is unknown why [appellant] was not served until November 15, 2023.

The State also attached the case summary showing that it filed its notice of seizure and intended forfeiture on April 3, 2020; attempted to serve appellant on April 30, 2020, July 16, 2020, and August 13, 2020, which were all returned as unexecuted; and attempted

3

service once more on February 1, 2023, which was executed on November 15, 2023.[3] The State also responded to appellant's other summary judgment arguments.

On July 22, 2024, the State filed a motion for traditional summary judgment contending entitlement to judgment as a matter of law because appellant judicially admitted all facts necessary in its forfeiture claim, including that: (1) the items seized "were used and/or intended for use in the commission of a felony violation of Chapter 34 of the Texas Penal Code"; (2) the items seized "were proceeds gained from the commission of a felony violation of Chapter 34 of the Texas Penal Code"; (3) the items "were lawfully seized"; and (4) the items were seized in Gonzales County, Texas. Appellant did not file a response to the motion. On October 2, 2024, the trial court granted the State's motion for summary judgment and ordered the subject property forfeited to the Gonzales County Attorney's Law Enforcement Fund. This appeal followed.

## II.    STANDARD OF REVIEW

A plaintiff moving for traditional summary judgment must conclusively establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law on his claim. TEX. R. CIV. P. 166a(c); *Brown v. Hearthwood II Owners Ass'n*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)). A defendant seeking a traditional summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead or conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). The

---

[3] The State attached evidence it claimed supported each element of its cause.

burden then shifts to the nonmovant to raise a genuine issue of material fact. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Franks v. Roades*, 310 S.W.3d 615, 621 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Ft Wor. Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id.* A genuine issue of material fact exists if there is more than a scintilla of evidence regarding the challenged element. *Id.*

We review the trial court's granting and denial of a traditional motion for summary judgment de novo. *Franks*, 310 S.W.3d at 620 (first citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); and then citing *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 708 (Tex. 2021) (citing *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) (plurality op.)). "When the trial court grants one motion and denies the other, the reviewing court must determine all questions presented and render the judgment that the trial court should have rendered." *Id.*

### III.     APPLICABLE LAW

The State must commence a forfeiture cause of action no later than the thirtieth day after seizure of the property has occurred. TEX. CODE CRIM. PROC. art. 59.04(a). In a

forfeiture proceeding, service of process is achieved through the rules governing civil cases. *Id.* arts. 59.04(b), 59.05; *14.9 Grams Methamphetamine v. State,* 28 S.W.3d 146, 147 (Tex. App.—Texarkana 2000, no pet.). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action . . . ." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012) (citation modified) (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)); *see also Ortiz v. State,* 24 S.W.3d 603, 605 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.). Therefore, generally a suit must be filed and service of process achieved within the limitations period. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). "If a party files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant." *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009) (citing *Gant*, 786 S.W.2d at 260). "When a defendant has affirmatively pleaded the defense of limitations, and shown that service was not timely, the burden shifts to the plaintiff to prove diligence." *Id.* (citing *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007)); *see also Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 298 (Tex. 2024) ("[E]xercising diligence is merely a means to the end of establishing timely service, the absence of which can doom a plaintiff's claim.").

## IV. DISCUSSION

By his first issue, appellant contends that the State failed to show it exercised diligence in attempting to serve him. The State concedes that it did not serve appellant within the statute of limitations period but claims it exercised diligence.

To determine diligence, we ask "whether the plaintiff acted as an ordinarily prudent

6

person would have acted under the same or similar circumstances . . . up until the time the defendant was served." *Ashley*, 293 S.W.3d at 179 (quoting *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007) (per curiam)). Whether the plaintiff exercised diligence is generally a fact question; however, a lack of diligence may be determined from the explanation provided "when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* The summary judgment evidence establishes that in this case, the State served appellant outside the thirty-day limitation period. Thus, the State had the burden to "present evidence regarding the efforts that were made to serve [appellant], and to explain every lapse in effort or period of delay." *Id.* (quoting *Proulx*, 235 S.W.3d at 216).

The Texas Supreme Court found that the plaintiff's "thirty-seven attempts at five different addresses over the course of nine months exhibited continuing diligence to preclude summary judgment." *Proulx*, 235 S.W.3d at 217. The court noted that "[a]fter numerous unsuccessful attempts at effectuating service, the plaintiff in *Proulx* sought substitute service because it was clear the defendant was attempting to evade service by 'moving from relative to relative and doing his best to avoid service from the courts and creditors.'" *Ashley*, 293 S.W.3d at 181 (citing *Proulx*, 235 S.W.3d at 217). Here, there is no evidence that appellant evaded service, and he was confined in a federal prison. *See id.*; *see also Tex. State Univ.*, 689 S.W.3d at 299 (explaining that using "diligence as a proxy for timeliness has proven sound and become engrafted into the law of service because it delays limitations when it ought to (when service is unusually hard, despite earnest efforts) and will not do so when it ought not to (when timely service would have been simple or is pursued with indolence)").

In *Ashley*, the Texas Supreme Court found that the plaintiff was not diligent when she served the defendant outside the limitations period. 293 S.W.3d at 180–81. The record reflected that the plaintiff attempted to serve the defendant two times, and her counsel stated that he and his assistants spent approximately twenty hours searching for the defendant's whereabouts. *Id.* at 180. The plaintiff's counsel averred that he utilized "many search engines" and "other sources," which the plaintiff listed. *Id.* He stated that he "personally went to the [defendant's] last known address . . . and canvassed the apartment project where she once resided." *Id.* The plaintiff "also attached an affidavit from her counsel, stating that he was a licensed private investigator for over fifteen years, that he is 'acquainted with the resources utilized by private investigators in skip tracing,' and that he utilized those resources in attempting to locate" the defendant. *Id.* Nevertheless, the court stated that "a period of almost eight months lapsed between July 27, 2005[,] and March 17, 2006" and determined that "as a matter of law," there was no "fact issue as to diligence, as this eight-month gap in time is left unexplained." *Id.* at 180–81. The court reasoned that the plaintiff did not specify when her attorney's assistants spent approximately twenty hours searching for the defendant and stated, "Either these twenty hours were expended early on, in which case, the diligence of the search later ceased; or, these hours were spread over eight months, in which case the search was never diligent. Either way, [the plaintiff] failed to meet her burden." *Id.* at 181.

In this case the State made its first request for issuance of citation on April 30, 2020, but claims it eventually withdrew its request. Then, after discovering that appellant was in federal custody, the State filed its second request for citation of service on July 16, 2020, which was returned undeliverable because it was sent to the wrong address. There

8

is no explanation in the record for this three-month delay. *See id.*; *see also Tex. State Univ.*, 689 S.W.3d at 299 ("[T]he easier it is to achieve service, the harder it will be for a plaintiff to establish diligence during a substantial (or even minor) delay.").

The State then attempted to serve appellant again on August 13, 2020, which was also undeliverable because it was sent to Karnes County Correctional Facility, which was the wrong address. Brumme stated that he searched the online "Federal Bureau of Prisons 'find an inmate' section" for appellant's location "[b]etween August 12, 2020 and February 1, 2023," but he did not provide any specific facts supporting this conclusory statement; for example, he did not state how many times he searched the database, how many hours he spent searching, or if he attempted to locate appellant by other means such as calling the prison system. *See Ashley*, 293 S.W.3d at 181. Brumme claimed that "[a]fter diligent efforts, [appellant's] location was discovered and the issuance of citation was requested again on February 1, 2023." There are no facts supporting Brumme's claim that he made a diligent effort to locate appellant, or that he located appellant at the correct address. The record belies a claim that he discovered appellant's location because the State again sent the citation to Karnes County Correctional Facility, a location that the State had already attempted to serve appellant with citation that had been returned undeliverable, and there is no evidence from the State that when they sent the citation once more to this address they had located him there. Thus, without evidence to the contrary, it appears that it was the wrong address based on the State's August 13, 2020 failed service attempt. *See id.* at 180–81; *see also Fernandes v. Parra*, 679 S.W.3d 187, 192–93 (Tex. App.—El Paso 2023, no pet.) (recognizing that plaintiff did not demonstrate diligence by taking "steps towards citation and service," at the address the plaintiff knew

9

"via unsuccessful service attempts that no one [with the defendant's name] lived" and that although the plaintiff "ran a skip trace that provided additional information about [the defendant] including several different means of contacting him, [the plaintiff] apparently did not follow up on any of those leads but instead continued personal service attempts at the same wrong address"). Thus, a gap of over two years in serving appellant remains unexplained. *See Ashley*, 293 S.W.3d at 180–81; *see also Gunderman v. Buehring*, No. 13-05-278-CV, 2006 WL 240517, at *3–4 (Tex. App.—Corpus Christi–Edinburg Feb. 2, 2006, pet. denied) (mem. op.) (explaining that although service had been attempted "on several occasions," the "affidavit [did] not state when or where service was attempted" and only reflected "three dates when service was attempted" and finding that the "contention that service was continuously attempted . . . [was] unpersuasive because the first citation had been returned unserved to the court on June 13, 2002, and a second citation was not requested until July 7, 2003"); *Hansler v. Mainka*, 807 S.W.2d 3, 5 (Tex. App.—Corpus Christi–Edinburg 1991, no writ) (determining that five- and four-month delays in service showed lack of diligence as a matter of law).

The citation eventually reached appellant at his correct address on November 15, 2023, at the Eden Detention Center. The State does not claim that it sent the citation to this correct address and did not provide any evidence that it had done so. The State maintains that the gap from February 1, 2023, to November 15, 2023 "was outside [its] control" and says, "it is unknown why service was not perfected until November 15, 2023." However, the gap can be explained by the State's failure to send citation to appellant's correct address, which does not satisfy the State's burden to demonstrate diligence. *See Ashley*, 293 S.W.3d at 179; *Webster v. Thomas*, 5 S.W.3d 287, 291 (Tex. App.—Houston

10

[14th Dist.] 1999, no pet.) ("We see nothing 'prudent' in calling the wrong clerk's office three times, in sending the citation to the wrong precinct, and then in delaying an additional two weeks, especially when counsel knows that mere filing of the suit on the last day of the limitations period does not toll the limitations. Nor do we see anything careful, persistent, devoted or painstaking in any of these actions."); *see also Gant*, 786 S.W.2d at 260 (finding that the plaintiff was not diligent as a matter of law due to unexplained gap in service of three different periods ranging from six to twenty months); *Stotts v. Ferrell*, No. 2-05-194-CV, 2006 WL 2033993, at *5 (Tex. App.—Fort Worth July 20, 2006, pet. denied) (mem. op.) ("Nevertheless, Appellant's counsel's reliance on a process server, whom he cannot identify, to serve process does not constitute due diligence because it is the responsibility of the party requesting service to see that it is properly accomplished."); *Ray v. Birdwell Const. & Pasadena Tank Corp.*, No. 01-01-00021-CV, 2002 WL 1480882, at *2 (Tex. App.—Houston [1st Dist.] July 11, 2002, no pet.) (mem. op.) (concluding that the plaintiff's "failure to request issuance of citation after filing the third amended petition [due to his own mistake] was not a valid excuse"); *Carter v. MacFadyen*, 93 S.W.3d 307, 314–15 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("A flurry of ineffective activity does not constitute due diligence if easily available and more effective alternatives are ignored.").

We conclude the State failed to use diligence to serve appellant. *See Carter*, 93 S.W.3d at 314 (finding that as a matter of law there was no diligence even though a plaintiff made efforts at service but acted carelessly and was not persistent); *Hansler,* 807 S.W.2d at 4 (stating due diligence must be exercised continuously). Consequently, the limitations period was not tolled, and the suit was barred. *See Fernandes*, 679 S.W.3d at

11

193 (concluding that the date of effective service outside the limitations period did not relate back to the original filing of the lawsuit because the plaintiff "did not exercise due diligence in attempting" service of defendant); *Webster*, 5 S.W.3d at 291. We sustain appellant's first issue.

## V. CONCLUSION

We reverse the trial court's summary judgment for the State, and we render judgment granting appellant's motion for summary judgment and dismissing the cause. *See Farmers Grp., Inc.*, 620 S.W.3d at 708.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
2nd day of April, 2026.