

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00010-CR

_____

THE STATE OF TEXAS, Appellant

V.

TRENTON KYLE GREEN, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 49202-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

O P I N I O N

Under Section 32.21, subsection (e-1), of the Texas Penal Code, "[i]f it is shown on the trial of an offense under this Section that the actor engaged in the conduct to obtain or attempt to obtain a property or service," forgery of any writing can be any offense level from a class C misdemeanor to a first-degree felony, depending on the "value of the property or service" under a value ladder commonly used in property offense statutes. TEX. PENAL CODE. ANN. § 32.21(e-1). Section 32.21(e) provides that, "[s]ubject to Subsection (e-1)," forgery of a writing that "is or purports to be: (1) part of an issue of money" is a third-degree felony. TEX. PENAL CODE. ANN. § 32.21(e). The State of Texas alleged in an indictment filed in the 188th Judicial District Court of Gregg County, Texas (the 188th District Court), that Trenton Kyle Green, in Gregg County, Texas, forged a twenty-dollar bill.[1]

The State did not specify why Green forged the twenty-dollar bill but simply alleged that he did so "with intent to defraud or harm another." Green argues that the undisputed evidence shows that he used the forged twenty-dollar bill to purchase a $2.00 cigarette lighter. Under subsection (e), forgery of a twenty-dollar bill as "an issue of money" would be a third-degree felony with a punishment range of not less than two years or more than ten years imprisonment and a fine not to exceed $10,000.00. *Id*.; TEX. PENAL CODE. ANN. § 12.34(a), (b). Under subsection (e-1)(1), forgery of a twenty-dollar bill that was passed to obtain goods or services of a value less than $100.00, TEX. PENAL CODE ANN. § 32.21(e-1)(1), would be a class C

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are not aware of any precedent from that court that is inconsistent with our opinion. *See* TEX. R. APP. P. 41.3.

misdemeanor with a maximum punishment of a fine not to exceed $500.00. TEX. PENAL CODE ANN. § 12.23.

After Green had spent five months in the Gregg County Jail awaiting trial on this indictment, the trial court heard his motion to quash. In his motion, Green argued that the offense in question is actually a class C misdemeanor rather than a third-degree felony because it was used to obtain property or services worth less than $100.00 and that, because the 188th District Court does not have misdemeanor jurisdiction, the trial court should dismiss the indictment. The trial court agreed with Green, granted his motion to quash the indictment, and released Green from jail.

The State appeals the trial court's ruling. Disregarding the language in subsection (e) that that subsection is "subject to subsection (e-1)," the State argues that it has the discretion to charge forgery of a twenty-dollar bill as either a class C misdemeanor under subsection (e-1)(1) or as a third-degree felony under subsection (e). It does not dispute that Green used the twenty-dollar bill to obtain goods with a value less than $100.00, but simply argues that its discretion is absolute so that, even if the evidence at trial shows that Green forged the twenty-dollar bill to obtain such goods, the offense remains a third-degree felony because the State elected to indict the case under subsection (e) instead of under subsection (e-1).

As explained below, we conclude that the 2017 amendments to Section 32.21 added an element to the offense of forgery that determines the offense classification, namely, the defendant's purpose in forging the writing in question. And, where a forgery would be a misdemeanor under the value ladder in subsection (e-1)'s offense-classification scheme where

3

the defendant's purpose was "to obtain or attempt to obtain a property or service"—whereas a forgery for some other purpose would be a felony under the statute's original offense-classification scheme—the defendant's purpose in forging the writing is the element that increases the range of punishment and must be pled in the indictment and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 469 (2000).

Because the State failed to allege Green's purpose for forging the twenty-dollar bill in the indictment, and because Green moved to quash the indictment,[2] the State failed to apprise Green of the offense with which he was charged. And, because district courts in general—and the 188th District Court specifically—do not have jurisdiction over misdemeanor offenses, and because forgery to obtain goods or services of a value less than $100.00 would be a misdemeanor under subsection (e-1), by failing to allege Green's purpose in forging the twenty-dollar bill, the State also failed to allege facts necessary to demonstrate that the offense was one that vested jurisdiction in the trial court. Consequently, the trial court correctly quashed the indictment. We affirm the trial court's order.

## I.      Evaluating the State's Proposed Interpretation of Section 32.21

### A.      Section 32.21 and the 2017 Amendments

We begin our analysis of Section 32.21 by reviewing the statute, as amended. The language added by the 2017 amendments is underlined, and the language deleted is interlineated:

> (b)      A person commits an offense if he forges a writing with intent to defraud or harm another.

---

[2]Our ruling in this case is limited to cases where the defendant files a motion to quash the indictment. In another case issued this day, *Lennox v. State*, cause number 06-19-00164-CR, we discuss the effect of the 2017 amendments to Section 32.21 in a forgery prosecution where the defendant failed to file a motion to quash the indictment.

4

(c)     Except as provided by Subsections (d), (e), and (e-1), an offense under this section is a Class A misdemeanor.

(d)     *Subject to Subsection (e-1), an* [An] offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.

(e)     *Subject to Subsection (e-1), an* [An] offense under this section is a felony of the third degree if the writing is or purports to be:
(1) part of an issue of money, securities, postage or revenue stamps;
(2) a government record listed in Section 37.01(2)(C); or
(3) other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person.

(e-1)    If it is shown on the trial of the offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service, an offense under this section is:

(1)     a Class C misdemeanor if the value of the property or service is less than $100;

(2)     a Class B misdemeanor if the value of the property or service is $100 or more but less than $750;

(3)     a Class A misdemeanor if the value of the property or service is $750 or more but less than $2,500;

(4)     a state jail felony if the value of the property or service is $2,500 or more but less than $30,000;

(5)     a felony of the third degree if the value of the property or service is $30,000 or more but less than $150,000;

(6)     a felony of the second degree if the value of the property or service is $150,000 or more but less than $300,000; and

5

(7)     a felony of the first degree if the value of the property or service is $300,000 or more.

[(e-2)     Notwithstanding any other provision of this section, an [An] offense under this section, other than an offense described for purposes of punishment by Subsection (e-1)(7), is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual as defined by Section 22.04.

Act of May 26, 2017, 85th Leg., R.S., ch. 977, § 25, 2017 Tex. Gen. Laws 3966, 3977 (current version at TEX. PENAL CODE § 32.21).

Resolution of this case turns on how we interpret two phrases introduced to Section 32.21 by the 2017 legislative amendments.  The first phrase, which is found in Section 32.21, subsections (d) and (e), states that those subsections are "subject to Subsection (e-1)."  This phrase is not defined in the Penal Code and has not been interpreted by Texas courts in a criminal case.  Nevertheless, the Texas Supreme Court and the Tyler Court of Appeals have interpreted this phrase in civil cases involving civil statutes.  Those courts have held that a statutory provision that is "subject to" a different statutory provision is subordinate to that other provision.  *See R.R. St. & Co. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 247 (Tex. 2005); *In re Houston Cty. ex rel Session*, 515 S.W.3d 334, 336 (Tex. App.—Tyler 2015, orig. proceeding).

The second phrase—"if it is shown on the trial of [an offense]"—is found in numerous sections of the Penal Code and ordinarily creates a punishment issue, although sometimes it is an element of the offense.  *See Oliva v. State*, 548 S.W.3d 518, 527–28 (Tex. Crim. App. 2018).  However, the manner in which the phrase is used in Section 32.21 is unique.  Specifically, in the other Penal Code provisions where the phrase is used, the phrase only increases the classification of the offense or the punishment range above the original level if additional facts are "shown on

6

the trial of" the offense.[3]   Under Section 32.21(e-1), however, the classification of the offense

can increase *or decrease* based on the value ladder.

[3]TEX. PENAL CODE ANN. § 20.05(b)(2) (increases from third-degree to first-degree felony); TEX. PENAL CODE ANN. § 20.06(g)(1) (increases to first-degree felony with a minimum of twenty-five years' imprisonment); TEX. PENAL CODE ANN. § 21.17(c) (increases from class C to class B misdemeanor); TEX. PENAL CODE ANN. § 21.18(e) (increases from state-jail felony to third-degree felony); TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (increases from class A misdemeanor to third-degree felony); TEX. PENAL CODE ANN. § 22.01(b-3)(2) (increases from third-degree to second-degree felony); TEX. PENAL CODE ANN. § 25.04(b) (increases from class B misdemeanor to third-degree felony); TEX. PENAL CODE ANN. § 25.07(g) (increases from class A misdemeanor to state-jail felony or to third-degree felony); TEX. PENAL CODE ANN. § 25.071(d) (increases from class A misdemeanor to third-degree felony); TEX. PENAL CODE ANN. § 28.02(d) (increases from second-degree felony to first-degree felony); TEX. PENAL CODE ANN. § 28.02(e) (increases from state-jail felony to third-degree felony); TEX. PENAL CODE ANN. § 30.04(d) (increases from class A misdemeanor to class A misdemeanor with minimum six months' confinement in county jail or to state-jail felony); TEX. PENAL CODE ANN. § 30.06(d) (increases from class C misdemeanor to class A misdemeanor); TEX. PENAL CODE ANN. § 30.07(d) (increases from class C misdemeanor to class A misdemeanor); TEX. PENAL CODE ANN. § 31.03(f) (increases one level on value ladder); TEX. PENAL CODE ANN. § 31.12(d) (increases from class C to class B misdemeanor or to class A misdemeanor with minimum 180 days' confinement in county jail and $2,000.00 fine); TEX. PENAL CODE ANN. § 31.16(d) (increases one level on value ladder); TEX. PENAL CODE ANN. § 31.18(e) (increases one level on value ladder); TEX. PENAL CODE ANN. § 31.20(d) (increases from class A misdemeanor to state-jail felony or from state-jail felony to third-degree felony, or from third-degree felony to second-degree felony, or from second-degree felony to first-degree felony); TEX. PENAL CODE ANN. § 31.20(d), (e) (increases one level from those listed in subsection (d)); TEX. PENAL CODE ANN. § 32.21(e-2) (increases to next higher category of offense unless it is already first-degree felony); TEX. PENAL CODE ANN. § 32.31(d) (increases from state-jail felony to third-degree felony); TEX. PENAL CODE ANN. § 32.45(d) (increases to next higher category on value ladder); TEX. PENAL CODE ANN. § 32.46(c-1) (increases one level of punishment range on value ladder); TEX. PENAL CODE ANN. § 32.48(f) (increases from class A misdemeanor to state-jail felony); TEX. PENAL CODE ANN. § 32.51(c-1) (increases to next higher category of the offense); TEX. PENAL CODE ANN. § 33.023(d-1) (starts as class C misdemeanor and becomes punishable under value ladder from class C misdemeanor to first-degree felony); TEX. PENAL CODE ANN. § 33.023(d-2) (increases to enhanced value ladder); TEX. PENAL CODE ANN. § 33.024(b-1) (starts as class C misdemeanor and becomes punishable under value ladder from Class C misdemeanor to first-degree felony); TEX. PENAL CODE ANN. § 33.024(b-2) (increases to enhanced value ladder); TEX. PENAL CODE ANN. § 35A.02(e) (increases to next higher category on value ladder); TEX. PENAL CODE ANN. § 36.05(e-2) (increases from third-degree felony to second-degree felony or to most serious offense in the case); TEX. PENAL CODE ANN. § 37.101(b) (increases from third-degree felony to second-degree felony or from class A misdemeanor to state-jail felony); TEX. PENAL CODE ANN. § 38.02(d) (increases from class C misdemeanor to class B misdemeanor or from class B misdemeanor to Class A misdemeanor); TEX. PENAL CODE ANN. § 38.12(h) (increases from class A misdemeanor to third-degree felony); TEX. PENAL CODE ANN. 38.123(d) (increases from class A misdemeanor to third-degree felony); TEX. PENAL CODE ANN. § 42.105(g) (increases from class C misdemeanor to class A misdemeanor); TEX. PENAL CODE ANN. § 43.23(h) (increases from class A misdemeanor to second-degree felony); TEX. PENAL CODE ANN. § 43.26(d) (increases from third-degree felony to second-degree felony if defendant has one prior conviction under subsection (a) and to first-degree felony with two prior convictions under that subsection); TEX. PENAL CODE ANN. § 43.26(g) (increases from second-degree felony to first-degree felony if defendant has a prior conviction under subsection(e)); TEX. PENAL CODE ANN. § 43.261(c) (increases from class C misdemeanor to class B misdemeanor); TEX. PENAL CODE ANN. § 43.261(d) (increases from class B misdemeanor to class A misdemeanor); TEX. PENAL CODE ANN. § 43.262(c) (increases from state-jail felony to third-degree felony or from third-degree felony to second-degree felony); TEX. PENAL CODE ANN. § 46.14(b)

The State argues that this anomaly gives it discretion to choose whether to charge the offense as a third-degree felony under subsection (e) or as a class C misdemeanor under subsection (e-1). As we will show below, the State's interpretation not only contradicts the specific language added to subsection (e-1) by the 2017 amendments, it also raises serious constitutional questions and could lead to unjust and unreasonable results. Accordingly, we must find an interpretation of Section 32.21 that gives effect to this unique use of common language in a manner that is consistent with prior precedent but that avoids those constitutional questions and the potential for unreasonable and unjust results.

## B.     Statutory Construction

### 1.     General Statutory Construction Principles

Because "[s]tatutory construction is a question of law, . . . we review [it] *de novo*." *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). "When construing statutes, we 'seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation.'" *Id.* (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). "We first look to the

---

(increases from third-degree felony to second-degree felony); TEX. PENAL CODE ANN. § 49.04(c) (increases from class B misdemeanor to class B misdemeanor with minimum six days' incarceration in county jail); TEX. PENAL CODE ANN. § 49.04(d) (increases from class B misdemeanor with minimum seventy-two hours' incarceration in county jail upon proof of alcohol concentration of 0.15 percent or more in person's blood, breath, or urine specimen); TEX. PENAL CODE ANN. § 49.065(c) (increases from class B misdemeanor to class B misdemeanor with minimum six days' incarceration in county jail); TEX. PENAL CODE ANN. § 49.09(a) (increases from class B to class A misdemeanor); TEX. PENAL CODE ANN. § 49.09(b) (increases from class A misdemeanor to third-degree felony); TEX. PENAL CODE ANN. § 49.09(b-1) (increases from third-degree felony to second-degree felony and from second-degree felony to first-degree felony); TEX. PENAL CODE ANN. § 49.09(b-2) (increases from second-degree felony to first-degree felony); TEX. PENAL CODE ANN. § 71.028(c) (increases to the punishment prescribed for next highest category of offense).

Although Section 37.10 of the Penal Code—Tampering With a Government Record—would appear to decrease the punishment upon proof at trial, upon closer inspection, it merely holds that the punishment range is different depending on the type of government document involved. TEX. PENAL CODE ANN. § 37.10(c)(1)–(4), (d)(1)–(3). Thus, Section 37.10, subsections (c) and (d), read as Section 32.21, subsections (c), (d), and (e), read prior to the 2017 amendments.

statute to determine if its language is plain. We presume that the legislature intended for every word to have a purpose, and we should give effect if reasonably possible to each word, phrase, and clause of the statutory language." *Id*. (citing *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). "We read '[w]ords and phrases . . . in context and constru[e] [them] according to the rules of grammar and usage.'" *Id*. (citing *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999)). "A statute must be construed in accordance with the plain meaning of its text unless the language of the statute is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended." *Baumgart v. State*, 512 S.W.3d 335, 339 (Tex. Crim. App. 2017) (citing *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014)). "If the text of a statute is ambiguous, or the plain meaning leads to such absurd results, then we can consult extratextual factors, including" the factors listed in Section 311.023 of the Texas Government Code. *Id.* at 339 (citing *Chase*, 448 S.W.3d at 11); *see* TEX. GOV'T CODE ANN. § 311.023.

Our construction of code provisions is also guided by the Texas Code Construction Act, Chapter 311 of the Texas Government Code. TEX. GOV'T CODE ANN. §§ 311.011–.035; *see* TEX. GOV'T CODE ANN. §§ 311.002(2), 311.003. Several sections of that act are pertinent to this case. Section 311.021 states,

In enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;
(2) the entire statute is intended to be effective;
(3) a just and reasonable result is intended;
(4) a result feasible of execution is intended; and
(5) public interest is favored over any private interest.

TEX. GOV'T CODE ANN. § 311.021.  Section 311.023 provides,

> In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
>
>> (1)  object sought to be obtained;
>> (2)  circumstances under which the statute was enacted;
>> (3)  legislative history;
>> (4)  common law or former statutory provisions, including laws on the same or similar subjects;
>> (5)  consequences of a particular construction;
>> (6)  administrative construction of the statute; and
>> (7)  title (caption), preamble, and emergency provisions.

TEX. GOV'T CODE ANN. § 311.023.

### 2.    The *In Pari Materia* Doctrine

In addition,

> [i]n order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and the same law.  Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy.
>
> . . . . But where a general statute and a more detailed enactment are in conflict, the latter will prevail, regardless of whether it was passed prior to or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling.

*Azeez v. State*, 248 S.W.3d 182, 191–92 (Tex. Crim. App. 2008) (quoting *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988) (citing 53 TEX. JUR. 2D *Statutes* § 186 (1964))).  As the Court recognized, the doctrine of *in para materia* "has been codified in Section 311.026 of the Government Code," which provides:

(a)     If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b)     If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

*Id.* at 192 (citing TEX. GOV'T CODE ANN. § 311.026).

Keeping these principles of statutory construction in mind, we examine Section 32.21 in light of the 2017 amendments.

**C.     The State's Proposed Interpretation of Section 32.21(e-1)**

The State argues that, under a plain reading of the statute,

Section 32.21(e-1) is a discretionary provision which falls to the discretion of the prosecution to invoke and which therefore only applies in cases when the State specifically alleges in the charging instrument that "the actor engaged in the conduct to obtain or attempt to obtain a property or service." In this case, the State did not allege the additional element in the indictment but rather sought to prosecute Appellee pursuant to Section 32.21(e)(1). That is a prosecution charging decision that is entirely within the discretion of the prosecution to make, and since the prosecution declined to invoke Section 32.21(e-1) in this case, the value ladder of Section 32.21(e-1) [was] inapplicable.

It further argues that "Section 32.21(e) is meant to potentially operate independent of Section 32.21(e-1) . . . because Section 32.21(e) contains its own punishment provision." The State admits that Section 32.21(e-1) is not "a special issue to be raised by the defense similar to how under the murder statute a defendant can prove the killing was done in sudden passion to reduce the punishment range down to a second degree felony." It further argues that "Section 32.21(e-1) is also not a defense issue that can be raised by the defense." Yet, it concludes that "the value

ladder provisions of Section 32.21(e-1) are and always were meant to be discretionary to be invoked by the prosecution if and only if they believe it is appropriate."

Thus, according to the State, by pleading less information in the indictment than would be required to charge a class C misdemeanor under subsection (e-1), the State can elevate the offense of forgery to a third-degree felony under subsection (e).[4]  And, according to the State, if it chooses not to allege that the twenty-dollar bill was forged in order "to obtain or attempt to obtain a property or a service," then the defendant must be punished under the third-degree-felony range of punishment even if the evidence at trial proves facts that would make it a class C misdemeanor under the statute.  The State argues, "If the State does not allege that specific element in the charging instrument then the value ladder provision simply do[es] not apply even if the State proves at trial that the offense was done to obtain a property or a service."

### D.    Problems with the State's Interpretation

#### 1.    The State's Interpretation Fails to Give Effect to the Language that Subsection (e) is "Subject to Subsection (e-1)."

The State's construction of Section 32.21 after the 2017 amendments is deficient in several respects.  First, the State's construction gives no effect to the amended language providing that subsections (d) and (e) are "[s]ubject to Subsection (e-1)."  We have not found any cases in which either the Texas Court of Criminal Appeals or the Tyler Court of Appeals has construed the term "subject to" when used in a penal statute.  However, the Texas Supreme

---

[4]And if the actor passed the forgery to "an elderly individual as defined by Section 22.04" of the Penal Code, the offense would be elevated to a second-degree felony.  TEX. PENAL CODE ANN. § 32.21(e-2).

12

Court and the Tyler Court of Appeals have applied the rules of statutory construction to determine legislative intent when the Legislature used this term in other statutes.

In *Houston County*, the county attorney of Houston County brought a petition for a writ of mandamus challenging the trial court's order granting mother's motion to disqualify it from representing the Department of Family and Protective Services in a parental-rights termination case. *Houston Cty.*, 515 S.W.3d at 336. To decide the matter, it was necessary for the Tyler court to construe Section 81.0075 of the Texas Family Code, which provides:

> *Subject to* the Texas Disciplinary Rules of Professional Conduct, a prosecuting attorney is not precluded from representing a party in a proceeding under this subtitle and the Department of Family and Protective Services in another action involving the party, regardless of whether the proceeding under this subtitle occurs before, concurrently with, or after the other action involving the party.

TEX. FAM. CODE ANN. § 81.0075 (emphasis added).

The court noted that, "[u]sed in the ordinary sense, 'subject to' means 'subordinate to,' [']subservient to,' or 'limited by.'" *Houston Cty.*, 515 S.W.3d at 341 (quoting *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956)). The court opined that, using the ordinary sense, "'subject to' unambiguously indicates that the specific language relating to the Texas disciplinary rules limits Section 81.0075's general language describing the permitted representation." *Id.* (citing *Franks v. Roades*, 310 S.W.3d 615, 629 (Tex. App.—Corpus Christi 2010, no pet.)). Consequently, the court held "that the unambiguous language of the statute reflects the legislature's intent to authorize the representation described in Section 81.0075 *unless* the Texas Disciplinary Rules of Professional Conduct prohibits it." *Id.* (emphasis added).

13

The Texas Supreme Court has also held that a statute that is expressly "subject to" another statute or regulation is constrained or limited by the dominant statute or regulation. In *R.R. Street & Co.*, the court construed the definition of "solid waste" under the Texas Solid Waste Disposal Act (SWDA). *R.R. St. & Co.*, 166 S.W.3d at 247. In pertinent part, the SWDA defined "solid waste" as follows:

> (34) *Subject to* the limitations of 42 U.S.C. Section 6903(27) and 40 C.F.R. Section 261.4(a), 'solid waste' means garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities.

*Id.* (emphasis added) (quoting TEX. HEALTH & SAFETY CODE ANN. § 361.003(34)). The court held that "[t]he entire SWDA definition of 'solid waste'. . . is expressly subject to the limitations of 42 U.S.C. § 6903(27) and 40 C.F.R. § 261.4(a)." *Id.* at 248. The court also held, "[W]e are bound by the plain language of section 361.003(34) of SWDA, in which the Legislature chose to limit the definition of solid waste by both 42 U.S.C. § 6903(27) and 40 C.F.R. § 261.4(a)." *Id.* Consequently, the court held that, "if [the Appellant's] disposal of the test-vial PCE mixture fits within RCRA's[5] statutory or regulatory domestic sewage exclusions, we must give the exclusions effect." *Id.*

Applying the plain or ordinary use of "subject to" to subsections (d) and (e) of Section 32.21, by making subsections (d) and (e) subject to subsection (e-1), the Legislature

---

[5]42 U.S.C. Section 6903(27) is a provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992, and 40 C.F.R. Section 261.4(a) is a regulation promulgated under the RCRA. *R.R. St. & Co.*, 166 S.W.3d at 238, 247.

unambiguously expressed its intent that, if the defendant's offense fits within the specific language of subsection (e-1)—i.e., if it is shown at trial that the defendant "engaged in the conduct to obtain or attempt to obtain a property or service"—then he must be prosecuted under the applicable provision of subsection (e-1). This, of course, also shows that the Legislature intended to limit the State's discretion to charge a defendant under subsection (d) or (e) if the known underlying facts of the case establish that the defendant forged the writing "to obtain or attempt to obtain a property or service." Consequently, the language "subject to subsection (e-1)" indicates that the Legislature did not intend to grant prosecutorial discretion but to eliminate prosecutorial discretion in charging a forgery. As a result of the 2017 amendments, if the offense can be prosecuted under subsection (e-1), then it must be.

### 2. The State's Interpretation Would Raise Serious Constitutional Questions

More importantly, however, the State's construction would also raise serious constitutional questions.

### a. Due Process and Due Course of Law Issue

First, if the State could choose whether to charge a defendant with forgery as a class C misdemeanor or a third-degree felony at its discretion, it would violate the defendant's due process right to be charged for the lesser, class C misdemeanor, offense. In *Azeez v. State,* the defendant received a traffic citation for speeding, and "[by] signing the citation, [he] promised to appear in Municipal Court No. 15 on July 21, 2003." *Azeez v. State*, 248 S.W.3d 182, 185 (Tex. Crim. App. 2008). He was charged by complaint with "unlawfully and knowingly fail[ing] to appear . . . in accordance with the terms of his release after having been lawfully released from

15

custody on condition that he subsequently appear in said court." *Id.* (alteration in original).  He was subsequently convicted in municipal court and sentenced to pay a fine of $400.00.  *Id.*

At issue on appeal were two statutory offense provisions covering the same conduct.  The first, Section 38.10 of the Texas Penal Code, provides, "A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release."  TEX. PENAL CODE ANN. § 38.10(a).  The Court of Criminal Appeals noted that "[a]n offense under this provision is a Class C misdemeanor where, as here, the offense for which the person was required to appear (speeding) is punishable by fine only.  Therefore, punishment could not exceed a fine of $500."  *Azeez*, 248 S.W.3d at 184 n.1 (citation omitted).  The second, Section 543.009(b) of the Transportation Code, states that "[a] person who willfully violates a written promise to appear in court, given as provided by this subchapter, commits a misdemeanor regardless of the disposition of the charge on which the person was arrested."  TEX. TRANSP. CODE ANN. § 543.009(b).  The Court of Criminal Appeals noted,

> The misdemeanor offense of failure to appear as promised as per the conditions of the speeding citation is specifically spelled out in the Transportation Code as a fine of no less than $1 and no more than $200.  Thus, the maximum fine for this offense is considerably lower than the maximum fine for the penal code violation.

*Azeez*, 248 S.W.3d at 184 n.2 (citation omitted).

At trial, "before jury selection commenced, the appellant orally moved to quash the complaint, arguing that, whereas it charged him with an offense in the express terms of the Penal Code provision, he should instead have been charged under the Transportation Code provision, which he contended is 'the more specific' provision."  *Id.* at 185.  In particular, Azeez argued

16

that "he should not have been charged with an offense under Section 38.10(a) of the Penal Code, as the complaint apparently had done." *Id.* "The trial court denied his motion to quash," and he was subsequently "convicted by a jury and fined $400." *Id.* The court of appeals affirmed his conviction and fine. *Id.* at 186.

The Court of Criminal Appeals reversed the court of appeals's judgment and remanded the case for further proceedings. *Id.* at 194. It explained:

> In construing penal provisions this Court has on a number of occasions found two statutes to be in pari materia, where one provision has broadly defined an offense, and a second has more narrowly hewn another offense, complete within itself, to proscribe conduct that would otherwise meet every element of, and hence be punishable under, the broader provision. In the case in which the special statute provides for a lesser range of punishment than the general, obviously an "irreconcilable conflict" exists, and due process and due course of law dictate that an accused be prosecuted under the special provision, in keeping with presumed legislative intent.

*Id.* at 192 (quoting *Mills v. State*, 722 S.W.2d 411, 414 (Tex. Crim. App. 1986)); *see also Ex parte Smith*, 185 S.W.3d 887, 893 (Tex. Crim. App. 2006) (orig. proceeding) ("[A] defendant has a due process right to be prosecuted under a 'special' statute that is *in pari materia* with a broader statute when these statutes irreconcilably conflict."). Because the complaint had merely tracked the language of Section 38.10(a) of the Penal Code and because Azeez had a due process right to be charged with the lesser—Transportation Code—offense, the Court of Criminal Appeals held, "The trial court erred to allow the appellant to be prosecuted under the Penal Code." *Azeez*, 248 S.W.3d at 194.

In this case, the State alleged that Green committed forgery with a writing that purported to be an issue of money under subsection (e). *See* TEX. PENAL CODE ANN. § 32.21(e)(1). But

17

subsection (e-1) has "a more narrowly hewn" offense, complete within itself, that specifically proscribes committing forgery to obtain or attempt to obtain a property or service, an offense that would otherwise meet every element of, and be punishable under, subsection (e). Accordingly, subsection (e-1) is a "special" provision under Section 311.026 of the Code Construction Act and the doctrine of *in pari materia*. *Azeez*, 248 S.W.3d at 193. And because subsections (e-1)(1)–(4) provide for a lesser range of punishment than the broader subsection (e), the provisions are in irreconcilable conflict, and due process and due course of law would require any defendant who committed forgery with a writing that is or purports to be an issue of money to obtain a property or service be prosecuted under subsection (e-1), at least if the value of the property or service was within the value amounts provided in subsections (e-1)(1)–(4). Thus, the State's interpretation would violate a defendant's due process and due course of law rights to be charged with the lesser, more narrow offense.

Essentially, in *Azeez*, the State charged the higher offense under the Penal Code by disregarding facts that would have made the offense a lesser offense under the Transportation Code. The Court of Criminal Appeals held that this violated the defendant's right to due process and due course of law. *Id.* If a difference between a maximum fine of $500.00 and a maximum fine of $200.00 creates a due process and due course of law violation, the difference between a maximum fine of $500.00 and a maximum punishment of ten years in prison raises significantly greater due process and due course of law violations. Therefore, the State's construction of the

18

statute raises a "grave and doubtful constitutional issue" under the due process and due course of law provisions of the United States and Texas Constitutions.[6]

### b.  Vagueness Issue

It is true that "prosecutors have broad discretion in deciding which cases to prosecute. Thus, '[i]f the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion.'"  *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (quoting *State v. Malone Serv. Co.*, 829 S.W.2d 763, 769 (Tex. 1992) (Gonzales, J., concurring) (citing *Bordenkirker v. Hayes*, 434 U.S. 357, 364 (1978)).  Yet, while "[n]othing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution," *Britz v. Illinois*, 489 U.S. 1044, 1045 (1989) (quoting *Gregg v. Georgia*, 428 U.S. 153, 199 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) (holding that the Georgia death penalty sentencing procedures were not unconstitutional simply because prosecutors had discretion to seek the death penalty against some defendants but not others), to enhance offenses,

---

[6]The Court of Criminal Appeals noted,

> On its face, the complaint itself was unobjectionable.  It alleged a failure to appear *apparently* under the terms of the Penal Code provision, but did not allege the particular circumstances of the terms of his release or why he was in custody in the first place.  It was only after the State's evidence disclosed that the case involved the failure to appear under the terms of a speeding citation that a basis for the appellant's *in pari materia* challenge became manifest.  When he reiterated that challenge in his motions for directed verdict and new trial, the trial court was effectively put on notice that the appellant was being prosecuted under the wrong statutory provision.

*Azeez*, 248 S.W.3d at 194.  This language could be interpreted as suggesting that a defendant must wait until trial to resolve the issue.  However, in *Azeez*, both statutory provisions were some species of misdemeanor offense.  Therefore, the indictment in *Azeez* alleged an offense clearly within the trial court's jurisdiction.  Here, because Green filed a motion to quash the indictment, it cannot be determined from the face of the indictment whether it charges a class C misdemeanor or a third-degree felony.  *See Diruzzo v. State*, 581 S.W.3d 788, 804 n.24 (Tex. Crim. App. 2019).

the Constitution requires that the State have probable cause to believe enhancing elements exist, plead those enhancing elements in the indictment, and prove them to a jury beyond a reasonable doubt. *See Jones v. United States*, 526 U.S. 227, 232 (1999); *Apprendi*, 530 U.S. at 499–500 (Thomas, J., concurring).

This limitation on prosecutorial discretion is necessary to prevent statutes from being unconstitutionally vague. In *State v. Edmond*, the Texas Court of Criminal Appeals held,

> Under the due process clause of the Fourteenth Amendment, a penal statute is void for vagueness if it fails to define the criminal offense in a manner sufficient to inform ordinary people whether their conduct is prohibited. However, the rationale for the vagueness doctrine extends beyond fair warning. A second rationale descends from the notion that a legislature must provide minimal guidelines to govern law enforcement. Without such guidance, a penal statute might be susceptible to arbitrary and discriminatory enforcement. As the Supreme Court observed in *Kolender v. Lawson* . . . :
>
> "Where the legislature fails to provide such minimal guidelines, 'a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'"

*State v. Edmond*, 933 S.W.2d 120, 125–26 (Tex. Crim. App. 1996) (citations omitted) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

To hold, as the State argues here, that it has unfettered discretion to charge a third-degree felony by disregarding facts that would otherwise make the offense a class C misdemeanor would expand the scope of prosecutorial discretion beyond its constitutional limits. The State's interpretation would potentially allow prosecutors to pursue their "personal predilections" to charge one defendant with a class C misdemeanor and another defendant who engaged in the same conduct with a third-degree felony by disregarding evidence that would make the offense a

20

class C misdemeanor. According to *Edmond*, this would raise an issue of whether Section 32.21 is impermissibly vague.

### c. Summary

Construing the 2017 amendments to Section 32.21 to allow the State discretion to charge a defendant in Green's position with either a third-degree felony under subsection (e) or a class C misdemeanor under subsection (e-1) for the same conduct, then, would potentially raise serious constitutional questions under both the Texas and United States Constitutions. *See* TEX. GOV'T CODE ANN. § 311.021(1). Because, as the United States Supreme Court held in *Jones* and as the Court of Criminal Appeals held in *Edmond*, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter," and because the State's interpretation of Section 32.21 raises "grave and doubtful constitutional questions," we must reject the State's interpretation. *Jones*, 526 U.S. 239 (quoting *United States ex rel. Attorney Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)); *Edmond*, 933 S.W.2d at 124.[7]

---

[7]The State's interpretation of Section 32.21 would also potentially violate the defendant's right to trial by jury under the Sixth Amendment, as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In *Jones*, the United States Supreme Court concluded that the federal carjacking statute created "three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict," *Jones*, 526 U.S. at 252, and then held that although the government is not required to allege and prove a factor which merely increases the sentence within the applicable sentencing range, "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id.* (Stevens, J., concurring) (subsequently adopted by majority in *Apprendi*, 530 U.S at 490). The majority reasoned that its construction was necessary to avoid "grave and doubtful constitutional questions," *id.* at 239–40, 252, under the Sixth Amendment resulting from "diminishment of the jury's significance by removing control over facts determining a statutory sentencing range." *Id.* at 248. If allowing a trial court to decide questions that determine the applicable sentencing range would violate the Sixth Amendment, allowing a prosecutor to eliminate the decision altogether by disregarding facts that would alter the potential sentencing range and prohibiting the defendant from litigating the issue would violate it even more so.

### 3. The State's Interpretation Potentially Leads to Unjust and Unreasonable Results

In addition, the State's construction potentially leads to significantly unjust and unreasonable results. As noted previously, in every other provision of the Penal Code where the phrase "if it is shown on the trial of" language is used, proof of the additional factor "on the trial of" the offense increases the punishment. Therefore, in other Penal Code statutes where this language is employed, if the state elects to forego proof of the additional factor, the punishment range remains at the lower level. Under Section 32.21, however, proof of the additional factor "on the trial of the offense" may either increase or decrease both the classification of the offense and the range of punishment.[8] Under the State's construction of Section 32.21, if it elects to forego proving that "the actor engaged in the conduct to obtain or attempt to obtain a property or service of a value less than $100.00," both the classification of the offense and the punishment range increase. Thus, by pleading and proving fewer facts, the State can charge and convict forgery of a twenty-dollar bill as a third-degree felony; to charge it as a class C misdemeanor, it would have to allege and prove additional facts.

When one compares the consequences of charging someone with a third-degree felony rather than a class C misdemeanor, it is clear that the State's construction would lead to significantly unjust and unreasonable consequences. A defendant charged with a class C misdemeanor faces a maximum punishment of a $500.00 fine, TEX. PENAL CODE ANN.

---

[8]*See supra* note 4. Section 32.21, as amended, is similar to the structure of Sections 33.023 (Electronic Data Tampering) and 33.024 (Unlawful Decryption) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 33.023(d), (d-1), (d-2); 33.024(b), (b-1), (b-2). However, both of those offenses are class C misdemeanors subject to enhancement based on whether "it is shown on the trial of the offense that" the additional factors existed. *Id.* Accordingly, under both sections, the punishment increases upon proof of the additional factors "at the trial of the offense."

§ 12.23—essentially, the equivalent of a traffic offense—as opposed to a prison term of two to ten years and a maximum fine of $10,000.00 when charged with a third-degree felony, TEX. PENAL CODE ANN. § 12.34. A class C misdemeanor charge would likely result in the defendant attending one hearing, would likely not require him to incur the expense of an attorney, and would be only a minor entry on his criminal record.

With a third-degree-felony charge,[9] however, the defendant would likely incur the expense of an attorney, would be required to attend multiple pretrial hearings once or twice a month until the trial,[10] and would incur a felony arrest and possibly a felony conviction on his criminal record. In addition, he would have to post bail, and if he could not make bail, he would be remanded in custody until his trial.[11] In addition, the pressure to plead guilty to a felony

---

[9]Merely being charged with a third-degree felony involves more serious consequences than being charged with a class C misdemeanor. For example, unlike in a misdemeanor offense, an officer arresting a person charged with a felony may use "all reasonable means," TEX. CODE CRIM. PROC. ANN. art. 15.24, to make the arrest, and "[i]n case of felony, the officer may break down the door of any house for the purpose of making an arrest, if he be refused admittance after giving notice of his authority and purpose," TEX. CODE CRIM. PROC. ANN. art. 15.25.

[10]In some counties in Texas, a defendant may reside many miles from the county seat where the courthouse is located, and merely showing up to court once or twice a month can be a significant hardship.

[11]Although an officer arresting a person charged with any offense must take the person before a magistrate "without unnecessary delay, but not later than 48 hours after the person is arrested," who "shall immediately perform the duties described in Article 15.17 of this Code," TEX. CODE CRIM. PROC. ANN. arts. 14.06(a), 15.17, "[a] peace officer who is charging a person . . . with committing an offense that is a Class C misdemeanor, other than [DWI], may, instead of taking the person before a magistrate, issue a citation to the person" providing them, among other things, "(1) written notice of the time and place the person must appear before a magistrate; [and]. . . (4) information regarding the alternatives to the full payment of any fine or costs against the person, if the person is convicted of the offense and is unable to pay that amount," TEX. CODE CRIM. PROC. ANN. art. 14.06(a). And, "[i]f a person charged with an offense punishable as a misdemeanor appears before a magistrate in compliance with a citation issued under Article 14.06(b) . . . ," after the person receives the statutory warnings required by Article 15.17, "the magistrate except for good cause shown may release the person on personal bond." TEX. CODE CRIM. PROC. ANN. art. 15.17(g). By contrast, no citation-to-appear exception exists for a felony charge, and if a person charged with a felony cannot make his bail, "after the allowance of a reasonable time," "the magistrate shall make an order committing the accused to jail to be kept safely until legally discharged." TEX. CODE CRIM. PROC. ANN. art. 17.27. Also, after an indictment is issued in a felony offense, the district clerk shall issue "[a] capias . . . upon each indictment for felony presented," TEX. CODE CRIM. PROC. ANN. art. 23.03, and "[w]hen a defendant who has been

offense—even if the defendant could ultimately establish at trial that the offense was only a class C misdemeanor—is significant simply because of the risk of receiving an adverse punishment verdict at trial. Rather than risk receiving a prison sentence in order to argue that the punishment should only be a fine of $500.00 or less, defendants will feel pressure to accept an offer to plead guilty to the third-degree-felony offense charged in exchange for deferred adjudication or a probated sentence.

Any defendant making that election could be required to pay a fine of up to $10,000.00 (rather than $500.00) plus court costs, perform up to 600 hours of community supervision, report monthly to a community supervision officer, pay monthly community supervision fees, and submit to random drug and alcohol testing for several years. *See* TEX. CODE CRIM. PROC. ANN. arts. 42A.053(a)(2), (d)(2)(B)(i), 42A.301(b)(4), (13), 42A.304(b)(3)(a). The court could also order the defendant to serve up to 180 days in county jail as a term and condition of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.302. In addition, such a defendant will be required to provide a DNA sample to the State. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.352. Should the defendant fail to comply with those terms and conditions of community supervision, his community supervision could be revoked and he could be remanded to serve his sentence—if one was imposed—or he could be adjudicated guilty and sentenced to any sentence

---

arrested for a felony under a capias has previously given bail to answer said charge, his sureties, if any, shall be released by such arrest, and he shall be required to give new bail." TEX. CODE CRIM. PROC. ANN. art. 23.06.

24

up to ten years in prison. And, if this was all accomplished via a voluntary plea agreement due to the pressure of facing an adverse judgment at trial, it would likely escape appellate review.[12]

The risk of injustice is particularly attendant to this case. Here, Green spent five months in jail awaiting trial before his motion to quash was granted. Even if we were to conclude that subsection (e-1) created a punishment issue that Green could raise at trial, if it is ultimately determined at trial that the offense is actually a class C misdemeanor, he will have spent five months in jail (or more) awaiting trial in a case where the maximum punishment is a $500.00 fine. It is hard to conceive that the Legislature would have intended to allow such an unjust and unreasonable result[13] by giving the State the discretion to charge the defendant with a third-degree felony by disregarding facts that would make the offense a class C misdemeanor otherwise.

## II. Finding An Interpretation That Harmonizes and Gives Effect to all Provisions of the Amended Statute

The State also argues that construing the amendments to Section 32.21 to require the defendant to be charged under subsection (e-1) if he commits forgery to obtain or attempt to obtain a property or service renders subsection (e)(1)'s provision that committing forgery with a writing that is or purports to be "an issue of money" superfluous. It reasons that, since the Legislature kept the proscription regarding "an issue of money" in subsection (e), it must have

---

[12]In addition, allowing a prosecutor to choose to prosecute the same offense as either a class C misdemeanor or a third-degree felony creates the possibility that some prosecutor, somewhere, might selectively prosecute small-value forgery cases as felony offenses in an unconstitutionally suspect manner, even if unintentionally. *Cf. Batson v. Kentucky*, 476 U.S. 79, 106 (1986) (Marshall, J., concurring).

[13]It is equally difficult to conceive that the Legislature intended to devote already-taxed prison and felony community supervision resources to felony convictions based on the forgery of a twenty-dollar bill that was passed to purchase a cigarette lighter worth two dollars.

intended that the value ladder provisions of subsection (e-1) were optional and to be charged at the State's discretion.

We agree that any construction of the amendments to Section 32.21 should not render a portion of the original statute superfluous. Rather, the construction should harmonize and give effect to all the provisions of the amended statute. Nevertheless, there is an interpretation of Section 32.21 that gives effect to all of its provisions after the 2017 amendments that does not raise the serious constitutional issues resulting from the State's interpretation.

### A. Introduction

The key to interpreting the 2017 amendments' effect on the offense definition found in Section 32.21 is to review how the statute applied before 2017. Under the pre-2017 version of the statute, "[a] person commit[ted] an offense if he forge[d] a writing with intent to defraud or harm another." TEX. PENAL CODE. ANN. § 32.21(b). The offense classification for an offense under subsection (b) turned only on the type of writing that was forged. Thus, prior to the 2017 amendments, Section 32.21 had one offense-classification scheme, with the degree of offense determined by the type of document that was forged.

The 2017 amendments created a new offense-classification scheme in subsection (e-1) that applies when the actor forges the writing for a specific purpose, namely, when "it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service." TEX. PENAL CODE ANN. § 32.21(e-1). The first question we must resolve, then, is whether this new language merely creates a punishment issue or whether it creates an element of the offense of forgery. We conclude that, notwithstanding the

26

language "if it is shown on the trial of," which usually creates a punishment issue, the language "to obtain or attempt to obtain a property or service" in subsection (e-1) is an element of the offense of forgery with intent to defraud. *See Oliva*, 548 S.W.3d at 528.

### B. Analysis

#### 1. *Oliva v. State*

In *Oliva*, the Court of Criminal Appeals noted,

> [I]t is not always true that this phrase ("if it is shown on the trial of" [the offense]) causes a statute to prescribe a punishment issue. The felony DWI provision, found in § 49.09(b), states that a DWI offense: "is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted" of two prior DWI offenses. Despite the inclusion of the phrase "if it is shown on the trial of," we have held the provision to prescribe an element of the offense of felony DWI. We observe that the phrase "if it is shown on the trial of" is used in numerous provisions that raise the degree of the offense, some based on prior convictions and others based on aggravating facts associated with the circumstances of the offense.

*Id.* (footnotes omitted) (citations omitted). The Court went on to state that, "[i]f . . . the statutory aggravating fact would be part of the circumstances of the offense on trial, that would be a factor in favor of construing the statutory aggravating fact as an element of the offense." *Id.* at 530. Here, the language in Section 32.21(e-1)—"to obtain or attempt to obtain a property or service"—creates an offense-classification scheme "based on aggravating facts associated with the circumstances of the offense." *Id.* at 528.

In addition, in *Oliva*, the court discussed *Calton v. State*, where it had previously "addressed a prior-conviction provision in the evading-arrest statute." *Id.* at 531 (citing *Calton v. State*, 176 S.W.3d 231, 233–36 (Tex. Crim. App. 2005)). The court noted that, although the evading arrest statute lacked "any phrase similar to 'if it is shown on the trial of,'" it also lacked

27

the words "punished" or "punishable." *Id.* In addition, it noted that the statute also "provided that an offense 'is' a state jail felony if the actor uses a vehicle and does not have a prior conviction and 'is' a third degree felony if the actor uses a vehicle and does have a prior conviction." *Id.* Based on these factors, the court held that "the existence of a prior conviction—necessary to make the offense a third degree felony—was an element of the offense." *Id.*

Here, subsection (e-1) lacks the words "punished" or "punishable." In addition, subsection (d) states that "an offense under this section *is* a state jail felony," subsection (e) states that "an offense under this section *is* a felony of the third degree," and subsection (e-1) states that "an offense under this section [*is* anywhere from a class C misdemeanor to a first degree felony, depending on the value ladder]. . . ." TEX. PENAL CODE ANN. § 32.21(d), (e), (e-1) (emphasis added).[14] Under *Oliva*, these facts indicate that the phrase "if it is shown on the trial of the offense that the actor engaged in the conduct under this section to obtain or attempt to obtain a property or a service" in subsection (e-1) is an element of the offense rather than a punishment issue notwithstanding the language "if it is shown on the trial of" the offense. *Oliva*, 548 S.W.3d at 528, 530.

---

[14]By contrast, subsection (e-2), which states that "an offense under this section . . . is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual," creates a punishment issue. TEX. PENAL CODE ANN. § 32.21(e-2); *Oliva*, 548 S.W.3d at 532 ("the inference that a prior-conviction provision is a punishment issue becomes much stronger when it includes 'if it is shown on the trial of' language, and that inference is further strengthened if it is also true that the provision is contained in an entirely separate section from the section that more obviously prescribes the elements of the offense").

### 2. What Effect Does the Language "Subject to Subsection (e-1)" Have on Section 32.21?

The next question we must resolve is the effect the language "subject to Subsection (e-1)" has on Section 32.21. As we discussed earlier, applying the plain or ordinary use of "subject to" to subsections (d) and (e) of Section 32.21 yields the conclusion that the unambiguous legislative intent is that subsections (d) and (e) are subordinate to, and limited by, subsection (e-1). *See R.R. St. & Co.*, 166 S.W.3d at 248; *Houston Cty.*, 515 S.W.3d at 341. Therefore, by making subsections (d) and (e) subject to subsection (e-1), the Legislature unambiguously expressed its intent that forgeries be charged under subsections (d) and (e) only when they cannot be charged under subsection (e-1). And by extension, the Legislature intended subsection (e-1) to address forgeries where the defendant acted with a different purpose than forgeries brought under subsections (d) or (e).

### 3. Interpreting Section 32.21 in Light of the 2017 Amendments

Consequently, by creating a new element of the offense of forgery and by making the offense-classification scheme in subsections (d) or (e) "subject to Subsection (e-1)," the 2017 amendments created competing offense-classification schemes depending on the defendant's purpose in forging the document. If the defendant forged the writing "to obtain or attempt to obtain a property or service," the offense classification is determined based on the value of the property or service taken under subsection (e-1)'s value ladder. If the defendant forged the writing for some purpose other than "to obtain or attempt to obtain a property or service," the offense classification is determined based on the type of writing forged. Because subsections (d) and (e) are "subject to Subsection (e-1)," the competing offense-classification schemes are

29

mutually exclusive. Stated another way, even though the same conduct could constitute an offense under both subsection (e) and subsection (e-1), the State may not charge a defendant under subsection (e) if it could charge that defendant under subsection (e-1).

As a result, the 2017 amendments did not simply add a value ladder to the statute as an alternate offense-classification scheme to be used at the prosecutor's discretion as the State argues here. Nor did it create an offense-classification scheme under subsection (e-1) that applies when the defendant forges a writing "to obtain or attempt to obtain property or service" and a competing scheme that applies when the defendant forges a writing for no purpose at all.[15] Rather, it added a new offense-classification scheme to be applied where the defendant forged the writing "to obtain or attempt to obtain a property or service" while retaining the original classification scheme to be applied when the defendant forged the writing for some purpose other than to "obtain or attempt to obtain a property or service." As a result, the State cannot prosecute forgery under the original offense-classification scheme by disregarding the defendant's purpose in forging the writing; rather, to prosecute under the original offense-classification scheme, the State must prove that the defendant forged the writing for a different purpose other than "to obtain or attempt to obtain a property or service."

As Green argues, after the 2017 amendments, the majority of forgery cases will be prosecuted under the new offense-classification scheme in subsection (e-1) because most forgeries are committed "to obtain or attempt to obtain a property or service"—particularly in

---

[15]The 2017 amendments not only affect offenses brought under subsection (e-1) but also affect offenses brought under any provision of Section 32.21. In other words, the 2017 amendments divided forgeries into two groups: those where the defendant forged the writing "to obtain or attempt to obtain a property or service" and those where the defendant forged the writing for some reason other than "to obtain or attempt to obtain a property or service."

light of Section 32.01's broad definitions of the terms "property" and "service." *See* TEX. PENAL CODE ANN. § 32.01(2), (3). However, there will still be occasions when forgery will be prosecuted under the original offense-classification scheme where it is shown that the defendant forged the writing for a purpose other than "to obtain or attempt to obtain a property or service." Although it may be difficult to conceive many reasons why an actor would forge a document other than "to obtain or attempt to obtain a property or service," a few come to mind. For example, a person could forge a "deed, deed of trust, mortgage, security instrument, or security agreement" to cloud the victim's title to real property. TEX. PENAL CODE ANN. § 32.21(d). A person could forge "part of an issue of money" and plant it on someone else to create legal jeopardy for the victim. TEX. PENAL CODE ANN. § 32.21(e). In other words, a person could forge documents identified in subsections (d) and (e)—not "to obtain or attempt to obtain a property or service"—but for some other purpose.

The fact that this construction limits the reach of subsections (d) and (e) does not render those subsections superfluous, and it does not render this interpretation invalid. As the Court of Criminal Appeals has recognized, amendments to one statute (or one part of a statute) may modify or limit the scope of another statute (or another part of the same statute) that is *in pari materia* with it. *See Diruzzo v. State*, 581 S.W.3d at 800.[16] Rather, this construction simply

---

[16]In *Diruzzo*, the State charged the defendant with sixteen counts of practicing medicine without a license. Each count was headed with a caption that noted, "§§ 155.001 & 165.152 Occupation Code/3rd DEGREE FELONY." *Diruzzo*, 581 S.W.3d at 791. Appellant moved to quash the indictment before trial on the basis that the trial court lacked subject-matter jurisdiction because the indictment only alleged misdemeanor offenses. *Id.* He argued that, based on amendments to Section 165.152 that the Legislature passed in 2003, which he asserted made the provision applicable only to licensed physicians who have violated the Texas Medical Practices Act, the trial court lacked subject-matter jurisdiction because the indictment alleged no more than a misdemeanor offense. *Id.* He further argued "that, after the 2003 amendment, only Sections 165.151 and 165.153 may be read to apply to non-physicians

31

recognizes that the Legislature intended for the majority of forgery cases—i.e., where the defendant forged the writing "to obtain or attempt to obtain a property or service"—to be prosecuted under the offense-classification scheme in subsection (e-1); and in those rare cases where the defendant forged the writing for some purpose other than to "obtain or attempt to obtain a property or service," the State can still charge that person under the offense-classification scheme in Subsections (d) and (e).

Accordingly, if a defendant forged a deed to obtain a cigarette lighter worth two dollars, it would be a class C misdemeanor under subsection (e-1)(1), but if he pledged the deed as security to obtain a loan from a bank for $300,000.00 or more, it would be a first-degree felony under subsection (e-1)(7). Because the defendant forged the deed "to obtain or attempt to obtain a property or service," the degree of offense is determined under subsection (e-1)'s value ladder based on the value of the property or service sought or obtained. By contrast, if the defendant forged a deed to cloud someone's real estate title, the offense would be a state-jail felony under subsection (d) because the defendant forged the writing for a purpose other than "to obtain or attempt to obtain a property or service," and the forged writing was a deed.

who practice medicine" and "[b]ecause Section 165.153 requires a showing of harm as an element of the felony offense, and because the indictment failed to allege any harm, he urged, the indictment can only be construed to allege the misdemeanor offense described in Section 165.151." *Id.* The trial court denied his motion to quash. *Id.* After the trial court denied the motion, the case proceeded to trial, and Diruzzo was convicted on all sixteen counts and sentenced to four years' imprisonment on each count. *Id.*

The Court of Criminal Appeals noted that resolution of whether the indictment against Diruzzo should have been quashed was dependent on how these statutes, considered *in pari materia*, were to be construed after the 2003 amendment to Section 165.152. *Id.* at 795–96. The court then "agree[d] with the parties that to construe Section 165.152 now to proscribe the practice of medicine without a license makes that offense a third-degree felony regardless of harm, and thereby effectively abrogates all of Section 165.153." *Id.* at 801. Whereas, under Diruzzo's construction, reading Section 165.152 "as *not* proscribing the practice of medicine without a license" gave effect to Section 165.153 and avoided a finding that it had been implicitly repealed. *Id.* Consequently, the court agreed with the appellant that the indictments only charged him with misdemeanor offenses and that, therefore, the trial court should have granted the motion to quash. *Id.* at 804.

This construction harmonizes and gives effect to all of Section 32.21's subsections and the plain meaning of each clause and phrase used by the Legislature. It also avoids the "grave and doubtful constitutional issues" raised by the State's interpretation of Section 32.21. And finally, it avoids the potential injustices arising from allowing the State to charge a defendant with a third-degree felony offense by ignoring evidence that would make the offense a class C misdemeanor under subsection (e-1). The question we must now resolve is how much of this information the State must allege in an indictment to charge an offense under Section 32.21(e) when the defendant files a motion to quash the indictment. Specifically, we must determine whether the State must allege in the indictment the defendant's purpose in forging the writing in question to charge an offense under subsection (d) or (e).

### III. Did the Trial Court Err in Quashing the Indictment?

#### A. Standard of Review

"The sufficiency of the indictment presents a question of law." *State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017) (citing *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2010)). "Appellate courts review a trial judge's rulings on a motion to quash a charging instrument *de novo*." *Id.* (citing *State v. Barbernell*, 257 S.W.3d 248, 251–52 (Tex. Crim. App. 2008)). Yet, "[t]he trial court's ruling should be upheld if it is correct under any theory of law applicable to the case." *Id.* (citing *State v. Rhinehart*, 333 S.W.3d 154, 161 (Tex. Crim. App. 2011)).

"The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense." *Id.* (citing U.S. CONST. amend. VI; TEX. CONST. art. 1,

§ 10; TEX. CONST. art. V, § 12b; *Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007)). "The charging instrument must convey sufficient notice to allow the accuse[d] to prepare a defense." *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000)). "Toward that end, Chapter 21 of the Texas Code of Criminal Procedure governs charging instruments and provides legislative guidance concerning the requirements and adequacy of notice." *Id.* (citing *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Ferguson v. State*, 622 S.W.2d 846, 849–50 (Tex. Crim. App. 1981) (op. on reh'g)).

"With respect to indictments, Article 21.02 sets out what facts must be included in an information and states, in part, that '[t]he offense must be set forth in plain and intelligible words.'" *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 21.02(7)). "Article 21.03[] provides that '[e]verything should be stated in an indictment which is necessary to be proved.'" *Id.* (second alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 21.03). "Finally, Article 21.04 provides that '[t]he certainty required in an indictment is such that will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense.'" *Id.* (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 21.04). An indictment is sufficient so long as it

> charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment[.]

*Id.* (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 21.11).

34

"[I]n most cases[,] a charging instrument that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice." *Id.* at 907 (citing *Barbernell*, 257 S.W.3d at 251; *Lawrence*, 240 S.W.3d at 916; *Curry*, 30 S.W.3d at 398). But, "when the statutory language fails to be completely descriptive," or "when a statute defines the manner or means of commission in several alternative ways, [and] an indictment . . . neglects to identify which of the statutory means it addresses," the indictment may be insufficient. *Id.*

As a result, we "engage in a two-step analysis when analyzing whether a charging instrument provides adequate notice." *Id.* We first "identify the elements of the offense." *Id.* "[T]he elements, defined by the Legislature, include: the forbidden conduct, the required culpability, if any, any required result, and the negation of any exception to the offense." *State v. Barbernell*, 257 S.W.3d 248, 255 (Tex. Crim. App. 2008) (citing TEX. PENAL CODE. ANN. § 1.07(22)). We then "consider whether the statutory language is sufficiently descriptive of the charged offense." *Zuniga*, 512 S.W.3d at 907.

"Texas law does not permit a defendant in a criminal case to attack the sufficiency or adequacy of an indictment by evidence beyond the four-corners of that indictment." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 919 (Tex. Crim. App. 2011). "[T]he critical determination is whether the trial court (and reviewing appellate courts) and the defendant can identify what penal-code provision is alleged and whether that penal-code provision is one that vests jurisdiction in the trial court." *Kirkpatrick v. State*, 279 S.W.3d 324, 328 (Tex. Crim. App. 2009) (quoting *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007)).

**B.**     *Apprendi v. New Jersey* **and** *Jones v. United States*

However, the Due Process Clause of the Fourteenth Amendment sometimes requires that additional matters be alleged in the indictment and proved beyond a reasonable doubt. In *Apprendi*, the United States Supreme Court held that "the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 469, 490. In that case, the "grand jury returned a 23-count indictment charging Apprendi" with offenses arising out of his actions in "fir[ing] several .22-caliber bullets into the home of an African-American family that had recently moved into a previously all-white neighborhood." *Id.* at 469. As part of a plea agreement, the defendant pled guilty to "two counts (3 and 18) of second-degree possession of a firearm for an unlawful purpose, and one count (22) of the third-degree offense of unlawful possession of an antipersonnel bomb" and went before the trial court, non-jury, to decide punishment. *Id.* at 469–70 (citation omitted). At sentencing, the State requested that "the court . . . impose a higher 'enhanced' sentence on count 18 . . . on the ground that the offense was committed with a biased purpose" as provided by a state "hate-crime" law. *Id.* at 468, 470. "The judge . . . concluded that the evidence supported a finding 'that the crime was motivated by racial bias,'" "found 'by a preponderance of the evidence' that Apprendi's actions were taken 'with a purpose to intimidate,'" and "sentenced him to a 12-year term of imprisonment on count 18." *Id.* at 471.

"Apprendi appealed, arguing, *inter alia*, that the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was based must

be proved to a jury beyond a reasonable doubt." *Id.* The United States Supreme Court reversed Apprendi's sentence and remanded the case to the trial court. *Id.* at 497. The United States Supreme Court reiterated its holding in *Jones*, stating,

> Other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Id.* at 490 (citing *Jones*, 526 U.S. at 252–53).[17]

> Significantly, the Supreme Court also held in *Apprendi*,

> The text of the statute requires the factfinder to determine whether the defendant possessed, at the time he committed the subject act, a "purpose to intimidate" on account of, *inter alia*, race. By its very terms, this statute mandates an examination of the defendant's state of mind—a concept known well to the criminal law as the defendant's *mens rea*. . . . The defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense "element."

*Id.* at 492–93.

### C.    Analysis

In this case, the State's indictment for "Forgery (F3)" alleges that Green

> [d]id then and there with intent to defraud or harm another, make a writing so that it purported to have been executed in a numbered sequence other than was in fact the case, and said writing purported to be of an issue of money of the tenor following: twenty-dollar bill marked with serial number MK854349 17F.

---

[17]In *Jones*, the United States Supreme Court also held that such facts must be alleged in the indictment. *Jones*, 526 U.S. at 252 (holding that the carjacking statute in question created "three separate offenses by the specification of distinct elements, *each of which must be charged by indictment*, proven beyond a reasonable doubt, and submitted to a jury for its verdict" (emphasis added)).

It could be argued that, even under the interpretation of Section 32.21 proposed above, this indictment is sufficient because it "tracks the statutory text of an offense" under subsection (e) and therefore "is sufficient to provide [Green] with adequate notice." *Zuniga*, 512 S.W.3d at 907. Yet, as is shown above, the 2017 amendments did not divide offenses into one group where the defendant forged the writing "to obtain or attempt to obtain a property or service" and a second group where the defendant forged the writing for no purpose at all. Rather, the 2017 amendments divided forgeries into two groups: those where the defendant forged the writing "to obtain or attempt to obtain a property or service" and those where the defendant forged the writing for some reason other than "to obtain or attempt to obtain a property or service."[18] It is the defendant's specific purpose in forging the document that determines the offense classification. Therefore, just as the United States Supreme Court observed about the federal carjacking statute in *Apprendi*, "the text of [Section 32.21] requires the factfinder to determine whether the defendant possessed, at the time he committed the subject act, a 'purpose . . . .'" *Apprendi*, 530 U.S. at 492. Where a forgery under the value ladder in subsection (e-1) would be a misdemeanor, the defendant's purpose in forging the writing is the "core criminal offense 'element'" that elevates the offense classification in a prosecution under subsection (d) or (e). *Id.* at 493. Therefore, under *Apprendi*, the State must prove this enhancing element beyond a reasonable doubt, and under *Jones*—as endorsed in *Apprendi*—the State must allege this enhancing element in the indictment. *Jones*, 526 U.S. at 252; *Apprendi*, 530 U.S. at 497.[19]

---

[18]*See supra* note 17.

[19]The State argues that, because "the indictment fully alleged a forgery offense prosecutable under Section 32.21 (e)," the question of Green's purpose in forging the twenty-dollar bill is evidentiary. The State then argues that

Green filed a motion to quash challenging whether the indictment invoked the trial court's jurisdiction; therefore, neither the State nor the trial court could rely on the heading nominally charging "Forgery (F3)" to establish jurisdiction. *See Diruzzo*, 581 S.W.3d at 804 n.24. The State failed to allege Green's purpose in forging the twenty-dollar bill. Therefore, as alleged, it cannot be determined from the face of the indictment whether the indictment charged forgery under subsection (e-1)(1) or forgery under subsection (e). Likewise, because forgery under subsection (e-1) could be a misdemeanor, it cannot be determined from the face of the indictment that the offense is a felony. Accordingly, the State failed to apprise Green of the offense with which he was charged and it failed to allege facts in the indictment necessary to demonstrate that the offense was one that vested jurisdiction in the trial court. Consequently, we find that the trial court did not err in granting the motion to quash the indictment.

---

because a defendant may not "attack the sufficiency or adequacy of an indictment by evidence beyond the four-corners of that indictment," *State ex rel Lykos*, 330 S.W.3d at 919, neither we nor the trial court can look to that evidence in resolving the motion to quash the indictment. Yet, the State does not contest that Green used the twenty-dollar bill in question to purchase goods of a value less than $100.00, so we do not need to review evidence to determine that such was his purpose. And, as we have demonstrated above, the defendant's purpose in forging the writing in question is the element of the offense that determines which offense-classification scheme applies under Section 32.21. Accordingly, because there is no question but that the offense would have been a class C misdemeanor under subsection (e-1), and because Green's purpose in forging the writing is the element that enhances the offense from a class C misdemeanor under subsection (e-1) to a third degree felony under subsection (e), that purpose must be alleged in the indictment. For this reason, the indictment has not "fully alleged a forgery offense prosecutable under Section 32.21(e)" as the State argues. Finally, because there is no dispute that Green used the forged twenty dollar bill to purchase goods of a value less than $100.00, we need not address the due process problems created by strict application of the standards of review applicable to motions to quash and sufficiency of indictments where an offense under Section 32.21 would be a felony under subsection (e-1). *See Lennox v. State*, 06-20-00194-CR n.1 (Burgess, J., concurring).

## IV. Disposition

Having determined that the trial court did not err when it quashed the indictment, we affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     August 12, 2020
Date Decided:      November 23, 2020

Publish